127    53
155   135

KNAPP, *Administrator, Appellant*, v. PUBLISHERS
GEORGE KNAPP & COMPANY.

In Banc, February 26, 1895.

1. **Corporation:** INCREASE OF CAPITAL STOCK: OWNERSHIP: STOCK-
HOLDERS. Where a corporation increases its capital stock, on the
basis of property and capital already owned, the increase belongs
to the then stockholders in proportion to their holdings.

2. ———: ———: ———: ———. A corporation increased its capital
stock in the manner above indicated, and allotted part of the new
stock to the old stockholders, thus: "To be placed to the credit of
the *Old Firm*, to be disposed of as thought proper by the present direc-
tors of the company, and when disposition is made of any portion of
said stock, the same to be specially noted in the records of the pro-
ceedings at the next meeting of the board of directors." This allotment
was preceded by a statement that the increase of stock was considered
necessary "in order to secure the services of new parties in the working
department of the corporation." On the death of one of the directors,
a large part of this stock had not been disposed of by the Old Firm.
*Held*, that the latter did not hold the stock in trust for the corpora-
tion, but that the Old Firm were its beneficial owners.

3. ———: ———: ———: ———. Where stock of a corporation is
increased for the purpose of sale on the basis of existing assets, the
old stockholders have a prior right to purchase a like proportion of
the new shares.

4. ———: ———: ———: ———. Placing new stock "to the credit
of" a stockholder is sufficient to indicate an intent to pass the title to
him, as against the company.

5. **Equity:** GIFT: TRUST. Equity can not be invoked to perfect an
imperfect gift by creating a trust, where the words in question are
insufficient of themselves to have that effect.

6. ———: TRUST: EVIDENCE. To establish a trust there must be evi-
dence of a clear intention of the settlor to become an accounting
party.

7. ———: ———: CORPORATE STOCK. A discretionary power of dis-
posal of stock "as thought proper" by the owner does not create a
trust for some other party.

8. **Written Contract, Interpretation of.** The interpretation of
a document is to be determined by the intent of the parties thereto,
exhibited by their language, and enlightened by the circumstances.

9. **Equitable Causes:** REVIEW OF FACTS: SUPREME COURT. In all cases of an equitable character the facts are open to review in the supreme court.

10. ———: REFEREE'S FINDING OF FACTS: SUPREME COURT. A finding of facts by a referee upon an issue in equity is not conclusive on appeal.

11. **Practice:** STIPULATION: CHANGING THEORY OF CASE: SUPREME. COURT. Where parties by stipulation have changed the nature of a civil action from law to equity, and have tried it on that theory, the supreme court will deal with it in conformity with the theory adopted by the parties.

12. ———: APPEAL: ESTOPPEL. Parties are bound on appeal by the positions they have taken in the trial court.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

The statement of facts by the referee, mentioned in the opinion of the court *in banc*, is as follows:

It appears that in and prior to 1864, George Knapp, Nathaniel Paschall and John Knapp were equal co-partners under the firm name of George Knapp & Company, engaged in the business of newspaper, book and job printing, and well known as publishers of the *Missouri Republican* in St. Louis; that in April of that year these members of said firm, in conformity with the provisions of the Missouri act of February 15, 1864, for organizing business companies, formed a corporation, in the same name of George Knapp & Company, to engage in substantially the same business as the firm had conducted.

The capital stock of the corporation was fixed at $300,000, with the privilege of increasing it up to $500,-000, divided into shares of $100 each; the business to be managed by a board of directors, who for the first year were to consist of the three incorporators.

The by-laws of this corporation provided for a president, an editor, a secretary and a treasurer; and, on the fifteenth of April, 1864, the board elected to these offices, George Knapp, president, Nathaniel Paschall, editor, and John Knapp, secretary and treasurer. On the same day the corporation, thus organized, purchased of the said firm of George Knapp & Company, and the latter transferred to the corporation, the *Missouri Republican* newspaper and job office and book bindery, and the *Republican* building and ground on Chestnut street, "and all the stock and fixtures, together with the debts due George Knapp & Company, now on the books of said firm of George Knapp & Company, except what is known as stocks, Charleville property, and real estate, independent of the *Republican* building mentioned above." For this property the corporation agreed to pay all the debts of the firm, and also the sum of $358,267.44. Of this purchase price $300,000 was presently paid in the capital stock of the corporation as follows: $100,000 to George Knapp, $100,000 to Nathaniel Paschall, and $100,000 to John Knapp; and these members of the firm gave the corporation their several receipts as for so much money on account of their interest in the *Republican* establishment, and were credited with capital stock to that amount on the books of the corporation; but no certificates were issued for the stock at this time.

The balance of $58,267.44 of the purchase price was passed to the credit of the members of the firm, on the books of the corporation, to be paid as they might desire, as follows: To George Knapp, $6,413.35; to Nathaniel Paschall, $22,254.11, and to John Knapp $29,599.98.

Notwithstanding these transactions, the copartnership of George Knapp & Company was not now dissolved, but was continued on account of its interests

outside of the interests of its members in the corporation, and its business was afterward transacted by the same management and "clerical force" as conducted the corporation, and practically its transactions were carried into the corporation, as a depositary or agent to receive and pay out the moneys of the firm, and the accounts of the business of the firm, including occasional entries of undivided profits of the corporate business, were kept on the books of the corporation in the name of the "Old Firm," that being the name by which the firm of George Knapp & Company was known in its dealings with the corporation. The business of the corporation itself was conducted as first organized, without change of officers or directors until the death of Nathaniel Paschall in December, 1866, whereupon, at a meeting of the board held January 7, 1867, Henry G. Paschall, who was administrator of the estate of his father, said Nathaniel, was elected a director in his place. Subsequently, on the fourth day of February, 1867, the office of editor was abolished, and Henry G. Paschall was elected secretary in the place of John Knapp, who resigned that office.

At a meeting of the board as last constituted, held January 6, 1868, the following resolutions were adopted:

"Whereas it is considered necessary in order to secure the services of new parties in the working department of the corporation of George Knapp & Company to increase the capital stock of the company from three hundred thousand dollars to five hundred thousand dollars, therefore, be it

"*Resolved*, That the capital stock of George Knapp & Company be increased to five hundred thousand dollars, and that disposition of said increase be made as follows: Fifty thousand dollars to George Knapp; fifty thousand dollars to estate of Nath. Paschall; fifty thousand dollars to John Knapp, and fifty thousand

dollars to be placed to the credit of the 'Old Firm,' to be disposed of as thought proper by the present directors of the company, and when disposition is made of any portion of said stock, the same to be specially noted in the records of the proceedings at the next meeting of the board of directors."

This increase was based on the original property of the corporation and its increased value up to this time, and, in the proportions and amounts stated in these resolutions, was credited to the several parties therein mentioned, in their accounts with the corporation kept on the ledger, and also in the book containing the records of the meetings of the board of directors; and the evidence tends to show that these credits were entered at the time the stock was increased.

Following out the purpose indicated in the resolutions to secure the services of new parties in the working department of the company, the Board of Directors now arranged with William Hyde for the transfer to him of two hundred shares of this increase of capital stock that had been credited to the Old Firm. The transaction is set out in the record of the meeting of the board, held February 3, 1868, as follows:

"In accordance with the authority conferred by the resolutions adopted January 6, 1868, the undersigned directors of George Knapp & Company have disposed of two hundred shares of the stock of George Knapp & Company to William Hyde, upon the following terms and conditions, which are to be transferred to him when the stock is fully paid up according to the terms and conditions as follows: When the dividends on the two hundred shares and the semiannual credit, seven hundred and fifty dollars, and such other sums as he may from time to time pay, shall amount to ten thousand dollars, in addition to the interest at the rate of six per cent. per annum on ten thousand dollars of

said stock, then two hundred shares, being twenty thousand dollars of the stock of said company, shall be transferred to him. It is understood that ten thousand dollars of said stock is presented to said William Hyde in consideration, and as an inducement, that he will give his undivided personal attention to the interest of the establishment, independent of the consideration of his salary."

"GEORGE KNAPP,
"JOHN KNAPP,
"HENRY G. PASCHALL."

As this was the only instance in which stock of the Old Firm was disposed of for the purpose mentioned in the resolution of January 6, 1868, it is proper to notice the way it is carried out.

An account was opened with Mr. Hyde in which he was debited with $10,000 for the two hundred shares. This account was ultimately closed in the manner agreed upon, and a certificate issued for his stock.

By an entry in the ledger of the corporation, under date of February 1, 1868, the Old Firm is credited "by Wm. Hyde, $10,000," and by a subsequent entry, under date of July 1, 1868, the Old Firm is credited, "by contingent, $10,000." The evidence tends to show that these entries were payments by the corporation to the Old Firm for the aforesaid two hundred shares transferred to William Hyde.

In the course of the business of the corporation, dividends were from time to time passed to the credit of the stockholders. These dividends, in two or three instances, were declared and recorded at regular meetings of the Board of Directors, but down to 1884 were usually determined upon at informal consultations of the directors, from an inspection of the semiannual balance sheets of the business. This was done under

the immediate direction of John Knapp, the business manager of the corporation.

With respect of the dividends, after the increase of the capital stock, the Old Firm was treated as a stockholder and credited with dividends proportioned to the shares of stock standing to its credit on the books of the corporation; amounting, after the transfer to Hyde, to three hundred shares. It is observable, however, that the Old Firm is in no instance mentioned as a stockholder to receive dividends, where declared at meetings of the Board of Directors, when the usual form was to fix the per cent. and direct the payment at that rate to the three stockholders, George Knapp, John Knapp, and the estate of Nathaniel Paschall. But, as already stated, the Old Firm was always credited in its account with the corporation on the corporation books, with these dividends.

Thus it stands credited with dividends as follows: June 25, 1868, $3,000; December 31, 1868, $1,500; May 31, 1869, $1,500; December 31, 1870, $1,500; June 24, 1871, $1,800; December 31, 1871, $1,500; June 30, 1880, $4,200; June 30, 1882, $1,800; March 15, 1883, $900; March 15, 1884, $900.

A dividend of four per cent., or $1,200, on the shares of the Old Firm was declared June 30, 1883, but instead of being credited, like the others, to the Old Firm, was distributed directly among the representatives of the Old Firm.

In 1870, the *Republican* building was destroyed by fire, and between 1871 and 1880 no dividends were declared.

In January, 1870, a call of ten per cent. on the capital stock was made by the directors of the corporation, and the Old Firm paid this call on the three hundred shares standing to its credit. It amounted to $3,000.

In November, 1879, a stockholders' meeting was held to vote on the proposition to change the name of the corporation, which resulted in adopting the name of "Publishers George Knapp & Co.," by which the corporation is now known. At this meeting John Knapp voted the three hundred shares of the Old Firm.

This seems to have been the first vote by the stockholders after the stock was increased.

In September, 1883, George Knapp died, and in the following October Girard B. Allen was elected a director, and John Knapp president in his place.

At a stockholders' meeting, held April 14, 1884, John Knapp, Girard B. Allen, and Samuel C. Clubb were elected directors, being the first election of directors since the organization of the corporation, in April, 1864. At this meeting the Old Firm shares were again voted. This board organized by electing Allen president, Clubb vice-president, and continuing Henry G. Paschall as secretary.

The evidence is not very full on the matter of changes in holdings of capital stock up to this time. There had been transfers of shares to new stockholders besides Hyde, but I infer that up to about the time of the death of George Knapp, the new parties had been entirely brought in from the families of the original incorporators. Transfers to some of these had been made as early as 1872. But whether any certificates of stock had been issued prior to 1878, is doubtful. None were issued until after Henry G. Paschall became secretary, and he at first fixed upon 1878 as the date of the first issues, but finally confessed a doubt when he filled them out, except that it was in 1868 or 1878, or some time between those years. It is quite certain that no certificate ever issued for the three hundred shares standing to the credit of the Old Firm.

Mr. Paschall, testifying here, says that the reason

no certificate was issued was, that they all along anticipated using more of those shares, as was done with Hyde, and it was more convenient, for that purpose, to have them stand as they were.

At a meeting of the directors, held June 2, 1885, Samuel C. Clubb, John Knapp, and George A. Madill, successor of G. B. Allen, being present, John Knapp requested that a certificate issue for the three hundred shares standing to the credit of the Old Firm to him as administrator of the firm. Action on the request was deferred to an adjourned meeting, held June 6, 1885, the same directors being present, when said request was disposed of by means of certain resolutions offered by Madill, reciting the resolutions of January 6, 1868, for the increase of capital stock, and the agreement of February 3, 1868, for the transfer of two hundred shares to Hyde, and continuing as follows:

"And *whereas*, the said two hundred shares of stock so sold to said William Hyde, as aforesaid, have been issued to said Hyde in pursuance of said statement of the record, as aforesaid, of February 3, 1868, and, *whereas*, the remaining $30,000, three hundred shares of said stock, so placed to the credit of George Knapp & Co., under the name of 'Old Firm,' by the said resolution, adopted January 6, 1868, have never been disposed of in any way, and the purposes for which the same were placed to the credit of the Old Firm can not be in any way advanced or affected by their so remaining to the credit of the Old Firm; and, *whereas*, no certificate has ever been issued to said Old Firm, or to any person, for said $30,000, three hundred shares of stock; therefore, *be it resolved*, that in so far as the said resolution of January 6, 1878, authorizing said $30,000, three hundred shares of stock so remaining unsold, to be placed to the credit of the Old Firm of George Knapp & Co., be, and the same is, hereby

repealed, and the secretary of this company is hereby authorized and directed to take said $30,000, three hundred shares of stock, so remaining unissued and unsold as aforesaid, from the credit of the Old Firm of George Knapp & Co., as aforesaid, by proper entries in the books of the company, and to place the same in the stock account of the company, as unsold stock of this company, where the said property belongs."

These resolutions were adopted by the votes of Madill and Clubb. John Knapp voted against them, and filed the following protest:

"I, John Knapp, protest against the passage of the above resolutions, and repeat my demand to have the certificate for three hundred shares of stock issued to me, as the surviving partner of the Old Firm of George Knapp & Co.

"JOHN KNAPP."

As a matter of fact, nothing was ever done under these resolutions, and John Knapp afterward renewed his application for a certificate for said shares, in a written demand made by him to the board of directors, under date of May 11, 1888, as follows:

"*To the Board of Directors of the corporation Pub. George Knapp & Co.*

"GENTLEMEN:—The partnership estate of George Knapp & Co., of which, as surviving partner, I am administrator, is the owner of three hundred shares of the capital stock of your corporation, credit for which is given on your corporation books under the title of the Old Firm. I desire you to issue a certificate of said three hundred shares to me as such administrator, and I hereby make formal demand on you for the issue to me of said certificate.       Yours, etc.,

"JOHN KNAPP,

"Adm'r Part. Est. George Knapp & Co."

At a meeting of the board of directors, held May 12, 1888, it was resolved that legal complications as to those three hundred shares prevented the board from complying with this demand.

In the meantime, at a previous meeting of the board, held April 14, 1888, in pursuance of a plan to sell twenty-five per cent. of all the capital stock for the use of the corporation, it was ordered, with the consent of all persons interested in the old firm and in the said three hundred shares, that a certificate should issue for seventy-five of said latter shares to be sold for the benefit of the corporation, but without prejudice to the rights of the Old Firm in the residue of said shares.

This was done, and counsel on both sides here concede that the remaining two hundred and twenty-five shares only, are in controversy in this case. John Knapp, as surviving partner of the Old Firm, or copartnership, of Geo. Knapp & Company, entered upon the administration thereof, but died in November, 1888, pending his said administration, and soon afterward, the plaintiff, Charles W. Knapp, became administrator of the estate of John Knapp, and, as such, took charge of, and is administering the said copartnership estate *de bonis non*. He sues here in that capacity.

It is shown that during and since the year 1889, the defendant has declared dividends on its capital stock as follows: Three per cent., January 22, 1889; three per cent , July 9, 1889; three per cent., December 26, 1889; three per cent., June 6, 1890; three per cent., December 23, 1890; three per cent., March 10, 1891.

*Seddon & Blair* and *Boyle & Adams* for appellant.

(1) The resolution of January 6, 1868, created a trust in favor of the corporation, as to $50,000 of stock which was thereby placed to the credit of the "Old

Firm," because:  *First.* The directors, irrespective of the peculiar phraseology of the resolution, occupied a position of trust with respect to the stock and were in duty bound to treat it as trust property.  Adams, Equity [8 Ed.], p. 27; *Shickle v. Watts,* 94 Mo. 410. *Second.* The language of the resolution itself, when considered in all its parts, manifests, in unambiguous language, a clear intent to create a trust for the benefit of the corporation.  *Carr v. Lackland,* 112 Mo. 456; *Schmucker's Estate v. Reel,* 61 Mo. 593.   (2) In interpreting a written instrument such meaning must be given, if possible, as to give effect to all its parts and make the whole consistent.  *Shickle v. Chouteau,* 84 Mo. 161.  *First.* The resolution when analyzed excludes every idea of any personal advantage to the members of the "Old Firm."  *Second.* The resolution clearly contemplates providing for a fund to bring in new parties to the working department of the corporation.  *Third.* Respondent's construction of the resolution necessarily eliminates from consideration several of its most significant clauses.  *Fourth.* The directors acting in their official capacity were constituted agents for disposing of the stock and the disposition when made was to be reported to the corporation, to be specially noted on its records.  *Fifth.* The different phraseology employed in disposing of the first $150,000 worth of the stock, from that employed in disposing of the $50,000 in question, shows an intent to treat the two amounts differently. (3)  All cotemporaneous acts confirm the construction which creates a trust rather than that which makes an absolute gift.   (4)  The fact that the trust is cast in connection with and in the form of powers, as in the resolution, affords no ground for respondent's theory of an absolute gift to the "Old Firm."  Perry on Trusts, [2 Ed.], sec. 511; *Malime v. Keighley,* 2 Ves. Jr. 335; *Erisman v. Poor,* 57 Pa. St. 509; *Lucas v. Lockhart,* 10

Sm. & M. 471; *Babbitt v. Babbitt*, 26 N. J. Eq. 54; *Collins v. Carlisle*, 7 B. Mon. 14; *Joel v. Mills*, 3 Kay & Johnson, 475; *Erickson v. Willard*, 1 N. H. 217; Perry on Trusts [2 Ed.], sec. 473; *Hunter v. Stembridge*, 12 Ga. 192; *Woods v. Woods*, 1 Mylne & C. 401; *Estate of Goodrich*, 38 Wis. 492; *Withrell v. Wilson*, 1 Keen, 81; 2 Pomeroy's Eq. Jur. [Ed. 1882], sec. 835. (5) *First.* The basis of the referee's report, namely: that the $50,000 of stock in controversy, instantly on its creation, without any act of disposition on the part of the corporation, became and was the property of the stockholders is unsound in law and in fact. 1 Morawetz on Corporations [2 Ed.], sec. 454; *Gibbons v. Mahan*, 136 U. S. 549. *Second.* The subsequent transactions and treatment of the stock in question by the trustees themselves, who are also the donees of the power of disposition, ought not to be considered in construing the resolution of January 6, 1868, and if they should be considered they can not be made effective to destroy the trust, if one was created by that resolution, and thus confer a personal benefit upon the trustees. *Third.* All these acts, under the law, are referable to the right of the holder of the legal title, therefore consistent with a trust, entitling the trustees to an accounting if necessary, with respect thereto. *Union Savings Association v. Seligman*, 92 Mo. 635. (6) If there were any doubt or ambiguity in the language of the resolution of January 6, 1868, thereby affording an opportunity for extraneous aid in construction, all subsequent transactions and acts with respect to the stock in question, referred to by the referee, were taken or allowed by the directors, for their own individual interest, and adverse to the interests of their corporation. Under such circumstances, such transactions and acts can not be prejudicial to the rights of the corpora-

tion and can not be made to so operate as to benefit the directors personally. *First.* There being no ambiguity in the resolution, cotemporaneous or subsequent acts can not be invoked to aid construction. *Gas Light Company v. St. Louis,* 46 Mo. 121; *Carr v. Lackland,* 112 Mo. 442; *Fleming v. Graham,* 34 Mo. App. 160; Bishop on Corporations [Enlarged Edition], sec. 412; *Railroad v. Trimble,* 10 Wall. 367; *Attorney General v. Hospital,* 17 Beavan, 435. *Second.* Evidence of subsequent conduct or acts of the directors, prejudicial to the corporation and beneficial to themselves individually, can not operate so as to destroy the trust and thereby benefit the trustees. Green's Brice's Ultra Vires [2 Ed.], pp. 1, 2; Morawetz on Corporations, [2 Ed.], secs. 517, 518; Perry on Trusts [4 Ed.], secs. 207 and 433; *McAllen v. Woodstock,* 60 Mo. 174; *Ward v. Davidson,* 89 Mo. 445; *Bent v. Priest,* 86 Mo. 475; *Hannerty v. Theatre Company,* 109 Mo. 297; *Wardell v. Railroad,* 103 U. S. 651; *Guild v. Parker,* 43 N. J. L. 430; *Society v. Eicholtz,* 25 Pac. Rep. (Kan.), 613; *Hiller v. Parrish,* 14 N. J. Eq. 380; *Ins. Co. v. Sebring,* 5 Rich. Eq. (S. C.) 342; *Railroad v. Hudson,* 16 Beavan, 485.

*Pollard & Werner* for respondent.

(1) When a corporation increases its capital stock, within the limits of its charter, each of the old stockholders has a right to a proportionate amount of the new stock, according to his holdings of the old, by paying for it, if the new or increased stock is issued for the purpose of bringing new and additional capital into the corporation; without paying for it, if the increased or new stock is based on the increased value of the capital already paid in by the holders of the old stock. 1 Morawetz on Corporations [2 Ed.], secs. 454, 455;

*Gray v. Bank,* 3 Mass. 365; *Jones v. Morrison,* 31 Minn. 140; *Ruse v. Bank,* 31 Pa. St. 78; *State ex rel. v. Smith,* 48 Vt. 266; *Dousman v. Co.,* 40 Wis. 418; *Eidmon v. Bowman,* 58 Ill. 444; *Gibbons v. Mahon,* 4 Mackey, 136; s. c., 136 U. S. 549.   (2) In the present case the two thousand shares of new stock were issued on the increased value of the capital already owned by the corporation, and paid in by the holders of the old stock. The new stock, therefore, immediately upon the increase, became the property of the old stockholders, in the proportion of their holdings of the old stock, as their absolute property, and the corporation had no right to withhold it from them. *Gibbon v. Mahon,* 136 U. S. 549.   (3) The new stock was distributed by the corporation to the old stockholders, in accordance with their holdings of the old stock, as appears by the resolution of the board of directors of January 6, 1868, and the entries on the corporate records.   (4) The new stock having been rightfully distributed by the board of directors to the old stockholders, in proportion to their holdings of the old stock, the five hundred shares placed to the credit of "Old Firm" at once became, legally as well as equitably, the property of the "Old Firm" and the "Old Firm" became a stockholder on the same basis, and with the same rights as the other stockholders, as to its disposition and control. The clause in the resolution distributing the stock to the "Old Firm," "to be disposed of as thought proper by the present directors of the company," constituted no limitation upon the right of the members of the "Old Firm" to dispose of the stock.   (5) The contemporaneous and subsequent acts of the corporation, and of the directors and stockholders, are competent evidence to prove, and do conclusively prove, that it was the intention of all parties interested that the "Old Firm" was to have the legal and beneficial title to, and ownership of, the stock placed to its credit.   When the

name of an individual appears on the stock book of a corporation as a stockholder, the presumption is that he is the owner of the stock. Morawetz on Corp. [2 Ed.], sec. 75; *Trumbull v. Payson*, 95 U. S. 418; *Glenn v. Springs*, 26 Fed. Rep. 494. (6) Corporate acts can be proven as well by the books and by parol testimony as by entries in the regular record books of the corporation. *Handley v. Stutz*, 139 U. S. 422. (7) The fact that no certificate of stock was issued to "Old Firm" is of no importance. A certificate is merely an evidence of the ownership of stock. It is not essential to constitute a stockholder. *Corwith v. Culver*, 5 Am. Corp. Cases, 244; 1 Morawetz on Corp. [2 Ed.], secs. 56, 184; *Schafer v. Ins. Co.*, 46 Mo. 248; *Hawley v. Upton*, 102 U. S. 314; *Bank's Appeal*, 5 Am. Corp. Cases, 603. (8) The corporation and all its stockholders are chargeable with knowledge of the entries made in the books of the corporation by their agent, in the course of his business, and with the true meaning of these entries as understood by him. 1 Greenleaf on Ev. [14 Ed.], sec. 493; *Allen v. Coit*, 6 Hill (N. Y.), 318; *Life Ass'n v. Dill*, 91 Ill. 174; Morawetz on Private Corp. [2 Ed.], sec. 473. (9) Parties who have become shareholders in this corporation by the purchase of stock stand in the same position, and have no greater rights, than the prior holders, from whom they purchased. 1 Morawetz on Corp. [2 Ed.], sec. 267; *Railroad v. Tiernan*, 15 Pac. Rep. 545 and 560; *Vennor v. Railroad*, 28 Fed. Rep. 581; *Brewing Co. v. Schneider*, 110 Mo. 83. (10) The increase of the capital stock from $300,000 to $500,000, being authorized by the charter, and agreed to by all the directors and stockholders, was legal. It was not a case where the statute requires certain steps to be taken to enable a corporation to increase its capital stock. *Pool v. Ass'n*, 30 Fed. Rep. 513; *Venner v. Railroad*, 28 Fed. Rep. 581. (11) This being an action

at law, the referee's findings of facts are conclusive upon this court.   *Wiggins Ferry Co. v. Railroad*, 73 Mo. 389.

BARCLAY, J.—This case came to the court *in banc* from the second division, after an opinion for reversal had been rendered (27 S. W. Rep. 334).

A motion for rehearing was made in that division, but was not decided, except inferentially by the transfer of the cause to the court *in banc*.  It has been fully reconsidered here, with the aid of able arguments by counsel.

The litigation arises from the facts which appear in the statement preceding this opinion.

The action was, at the outset, an ordinary one at law, by plaintiff, as personal representative of the old firm of George Knapp & Company, against the corporation, "Publishers George Knapp & Co.," to recover $5,400 and interest, as dividends on three hundred shares of stock in the defendant company.

The answer was a general denial, except as to the allegation of the incorporation of defendant, which was admitted.

Afterward a stipulation of all the counsel was filed to the effect that the sole issue to be tried was, as to which of the adverse parties was the beneficial owner of the stock mentioned in the petition.   It was further agreed that "in proving or disproving the fact of such ownership of said stock, or any of it, plaintiff or defendant may introduce any kind of competent evidence whether in the shape of estoppel *in pais* or otherwise as either may desire."

The amount of dividends recoverable (in event of a finding for plaintiff as to any part of the stock) was also stipulated.

The cause was then referred by consent to Mr.

Arba N. Crane to try all the issues. He did so, and as a result found for the plaintiff, after hearing considerable evidence.

His statement of facts we have adopted, and direct that it be published as an introduction to this opinion in the report of the case *in banc*. We also acknowledge our obligations to his interesting report upon the questions of law in the case, as we have availed ourselves of much of the materials furnished therein.

After judgment by the circuit court, approving his findings and decision, the defendant brought the present appeal, its exceptions to the report having been first duly submitted and overruled.

1. The stipulation of counsel on the circuit in regard to the real issue effectually transformed the proceeding from an action at law for the dividends, into a suit in equity to determine the beneficial ownership of the stock. The parties tried the cause before the referee on the basis of that stipulation, and hence as (in substance) an issue in equity.

Such being the state of the case, the fact that the pleadings originally presented only an issue as to the legal title to the stock should not preclude this court from reviewing the cause from the standpoint taken by the parties in the trial court as shown by the whole course of the proceedings there.

Parties must generally be held bound on appeal by the positions they have taken in the trial court touching the actual issues involved.

We, therefore, do not regard the findings of fact of the referee as conclusive in this court, but open to review upon this appeal as in all cases of equitable cognizance. We, however, agree with the learned referee in his judgment upon the facts, and shall proceed to apply thereto the rules of law which we believe should control the result.

2.   The pivotal point in the controversy is in the proper construction to be given to the resolutions of January 6, 1868, which are quoted at large in the statement of facts.   The question upon those resolutions is whether their effect was to vest in the Old Firm · or in the defendant corporation the beneficial ownership of the stock, which was then "placed to the credit of the Old Firm."

It should be borne in mind that the case at bar requires no discussion of the rights of creditors, or other strangers to the act to be construed.   The dispute is merely between the immediate parties, then composing the firm, and the corporation, and persons in privity to them.   Its solution depends, at last, upon a judicial view of the true intent of the parties, exhibited by the forms which they have used to express that intent, and enlightened by the surrounding facts. *Towler v. Towler* (1894), 142 N. Y. 371.

It may be well, at this point, to note some elemental considerations touching the mutual relations of a corporation and its stockholders.

One leading proposition (which, we apprehend, must have a very influential bearing upon the rights of the parties) has been stated with such clearness by the learned referee that we prefer to quote his exact language, viz.:

"It appears that the increase in the capital stock in this case was authorized by the articles of incorporation, and was not made to add anything to the capital, but was based on the original property of the corporation with its additions and enhanced value as it then existed.   This fact has an important relation to the question of who owned the stock in dispute when created and before being disposed of by the credit to the Old Firm;  * * *  Ordinarily, stock belongs to the stockholders, while the capital represented by the

stock belongs to the corporation. This controversy relates to the stock. Where capital stock is increased by a corporation for the purpose of increasing its capital by a sale of the stock, the latter belongs to the corporation until disposed of. ' But where the object is, not to increase the capital, but the additional shares are created on account of the existing capital or property of the corporation, the entire stock, as then increased, represents no more capital than the original shares had done, and the new shares are not owned by the corporation, but, as soon as created, become the individual property of the owners of the old shares, in proportion to their holdings. *Gibbons v. Mahon*, 4 Mackey, 136; 136 U. S. 549.

"The corporation has no power to deprive the shareholders of this right. Even where stock is increased for sale, the old shareholders have a prior right to purchase a like proportion of the new shares, which they may enforce against the corporation to obtain the shares, or recover damages if the shares have been otherwise disposed of. *Eidman v. Bowman*, 58 Ill. 444; *Gray v. Portland Bank*, 3 Mass. 364; *Jones v. Morrison*, 31 Minn. 140, pp. 152, 153."

The three persons named in the resolutions under construction were all the stockholders of the corporation. They were also the sole and equal members of the Old Firm. So that, when the increase of stock was made, those individuals (as between themselves and the corporation) were entitled to claim the increased stock, as a matter of right, not of grace or of gift, inasmuch as it represented the same property owned by the corporation before increasing the number of its shares. The five hundred shares, which were placed to the credit of "Old Firm," therefore belonged, at that time, to the individual incorporators (who happened, also, to constitute the Old Firm), unless they

parted with their interest by the terms of the resolutions to which they assented. The effect of applying the rule of law declared by the learned referee to the facts in view at the time the resolutions were adopted, gives the case a different aspect from that which it seems to have had to the learned judge who prepared the opinion delivered in the second division (27 S. W. Rep. 334).

The real question is not whether "the stock was intended as a gift to the Old Firm." The question is rather this: Whether the Old Firm can properly be held to have made a gift to the corporation or a declaration of trust for it, as to the five hundred shares (representing $50,000), which equitably belonged to the members of the Old Firm as owners of the original stock.

A completed gift of the stock to the corporation the transaction certainly was not (*Flanders v. Blandy,* 1887, 45 Ohio St. 108). But defendant's counsel seek to reach substantially the same result by their claim that a trust for the corporation was thereby created.

Placing the five hundred shares of new stock "to the credit of the Old Firm" was obviously a plain expression of intent to pass the title to that firm, if that language stood alone.

No certificates of stock at that time were issued to any of the stockholders; nor had any been issued for their former holdings. The membership was small, and those formal steps were not attended to until later.

There is no pretense, however, that the title did not pass to the Old Firm. The question is whether the words which qualify the credit to the Old Firm divested that title in law or equity. Those words are these: "To be disposed of as thought proper by the present directors of the company, and when disposi-

tion is made of any portion of said stock the same to be specially noted in the record of the proceedings at the next meeting of the board of directors."

Did this language destroy the beneficial interest of the Old Firm in this stock? Or can it be justly construed as carrying an intention on the part of the Old Firm to give that block of stock in any manner to the corporation?

The defendant's counsel insist on affirmative answers to these questions. Their chief contention is that the words above quoted (in connection with other parts of the resolutions) created a trust in favor of the corporation as beneficiary, the Old Firm being merely a trustee (as to those shares) for the purposes intimated in the opening lines of the resolutions. Those lines declared that "whereas, it is considered necessary in order to secure the services of new parties in the working department of the corporation of George Knapp & Co. to increase the capital stock," etc. But the resolutions then proceeded to announce the increase of the capital stock to $500,000, "and that disposition of said increase be made as follows:" Then blocks of $50,000 of the new stock were allotted to George Knapp, John Knapp and the estate of Nathaniel Paschall, respectively.

We do not suppose that defendant's counsel would claim that these dispositions of the new stock to those individuals are to be regarded as in trust for the benefit of the corporation on account of the previous announcement of the general object of the increase, by the preamble of the resolutions. But if such a claim were made, it would be a sufficient answer to say that the specific and absolute apportionment of stock to those persons controlled the general and vague purpose expressed at the outset of the document.

Yet they claim that that expression of purpose

should nevertheless affect with a trust the allotment to the Old Firm. The supposed "trust," or limitation of ownership of the stock, is extracted from the same preamble, coupled with the nearer words, "to be disposed of as thought proper by the present directors of the company," etc. Those directors constituted the Old Firm at that time. So that this form of disposition of the stock amounted to nothing more than a declaration that the new stock, which was placed to the credit of the Old Firm, might be disposed of by the latter in order to bring desirable outsiders into the service of the common enterprise.

It must be remembered (and that fact casts much light on the meaning of the resolutions) that this was a very close corporation. The two Messrs. Knapp and the elder Mr. Paschall had for many years composed the Old Firm; and, later, they formed the corporation. On the death of Mr. Paschall, his son, Henry, representing his father's estate, took his place for the purpose of managing the interests owned by the family in the firm and in the corporation. No outsiders had been admitted to the enterprise. These resolutions indicate that it was then thought advisable to admit some, with a view "to secure the services of new parties in the working department of the corporation." But such admission was to be carefully guarded by the original owners. Hence the closing statement in the resolutions, viz.: "When disposition is made of any portion of said stock, the same to be specially noted in the records of the proceedings at the next meeting of the board of directors." These words accompanied the power of disposition of the Old Firm stock. The latter was to be disposed of "as thought proper," by the then directors, who were also the Old Firm.

Probably one idea of this special form of transfer

to the Old Firm was to express a formal sanction, by the parties in interest, to the proposed admission of new persons to the corporation. Those admissions were to be controlled (as to persons and terms) by the discretion of the members of the Old Firm, who were to retain the power to dispose of that block of stock (or of such parts of it as they desired) upon such terms as they—the real and beneficial owners of the stock—saw fit to make.

The parties engaged in the transaction were men of affairs and experience. No doubt they had reasons, sufficient and satisfactory to themselves, for that arrangement.

We repeat that the rights of no outside persons come into consideration in determining the validity of the course they saw proper to take.

Whatever their purposes may have been in setting this block of stock apart to the credit of the old firm, it seems to us that the terms of the resolutions did not impose upon the Old Firm the duty to dispose of all of that stock for the benefit of the corporation, nor did it amount to a declaration of a trust wherein the corporation was to be beneficiary.

Whatever conjecture may be indulged as to what the parties interested meant to do, in respect of the exercise of the power of disposition of the stock, we consider it clear that the resolutions fall short of expressing any purpose or intent to give back the beneficial interest in that stock to the company, or to declare the Old Firm trustees of it for the corporation, in any wise.

Expressing a power in the owner to dispose of property "as thought proper" (which is the language under review) is a somewhat feeble and ineffective way to manifest an intent of the owner to hold, or to dispose of, that property as trustee for some other person as

beneficiary. It rather indicates a strong affirmance of the right of absolute disposal which usually appertains to ownership.

The power of disposal mentioned was not to be exerted by the directors of the corporation generally; but by the *"present"* directors who were also the Old Firm, and the owners of the stock—the parties whose corporate property was represented by the new stock as well as by the old stock, as already explained.

We take it that language should be fairly and reasonably plain in its meaning to justify an inference that the owners of this block of $50,000 worth of stock intended voluntarily to give up its beneficial ownership to the corporation.

It is a well recognized rule that to establish a trust there must be evidence of a clear intention of the settlor to become an accounting party. Godefrois, Trusts [2 Ed.], p. 85.

"All the cases agree that, even in the case of a trust created or continued in the party from whom the bounty emanates, the transaction must show that the entire equitable interest is parted with." *Lane v. Ewing* (1860), 31 Mo. 87.

Equity can not successfully be invoked to perfect an imperfect gift by creating a trust where the words employed are insufficient of themselves to have such effect. *Richards v. Delbridge* (1874), L. R. 18 Eq. Case 11.

The credit to the Old Firm does not declare or imply that the stock shall be disposed of for the use, benefit or profit of the corporation. It is to be disposed of "as thought proper," by the same persons who received and owned the stock, though described otherwise in the power of disposition.

Such a discretionary power of disposal furnishes

no solid ground on which to found the theory of a trust. *Hahn v. Hutchinson* (1893), 159 Pa. St. 133.

Even that discretionary power ceased upon the death of Mr. George Knapp, in 1883, and only part of that block of Old Firm stock had, at that time, been disposed of. The beneficial title then remained where the resolution placed it, namely, to the credit of the Old Firm.

We consider that the remainder of that stock belonged to the Old Firm beneficially, and that no trust in favor of the corporation existed, or exists, in respect of it.

3.  Whether further valid objections to holding the allotment of stock to the Old Firm as a trust for, or gift to, the corporation, may not be found in other principles governing voluntary gifts and trusts for volunteers, we need not pause to inquire, since what has been said is sufficient, we think, to support the judgment we shall announce.

4.  The foregoing views as to the proper meaning and effect of the resolutions of January 6, 1868, relieve us of discussing the inferences to be drawn from the subsequent acts of the corporation or its officers in aid of our interpretation of those resolutions. We do not consider that there is anything in those later acts militating against that interpretation in any way.

There may be some difficulties in that branch of the case, in applying those acts to support our view of the intent of the parties (expressed in the resolutions), growing out of the then relations of the members of the Old Firm to the corporation. We need not attempt to solve those difficulties.

From what has been already said it is clear that the referee and the learned circuit judge were correct in their conclusions. Accordingly we recommend an

. affirmance of the judgment.    It is so ordered.    BRACE,
C. J., and GANTT, MACFARLANE, SHERWOOD and ROBIN-
SON, JJ., concur.    BURGESS, J., dissents.