Nancy Corinne DYER and J. Raymond Dyer, Petitioners,

Harry J. Stadin and Cyrus L. Day, Intervenor-Petitioners,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent,

Union Electric Company, Intervenor-Respondent.

No. 16347.

United States Court of Appeals Eighth Circuit.

April 24, 1961.

Rehearing Denied May 29, 1961.

535

J. Raymond Dyer, St. Louis, Mo., for petitioners. Nancy Corinne Dyer was on the brief.

Harry J. Stadin, St. Louis, Mo., intervenor-petitioner, pro se.

Arthur Blasberg, Jr., Atty., S. E. C., Washington, D. C., for Securities and Exchange Commission; Thomas G. Meeker, Gen. Counsel, Solomon Freedman, Asst. Director, Aaron Levy, Asst. Chief Counsel, Div. of Corporate Regulation, Mahlon M. Frankhauser, Atty., S. E. C., Washington, D. C., on the brief.

William H. Ferrell, St. Louis, Mo., for Union Electric, intervenor-respondent. Robt. J. Keefe, St. Louis, Mo., was with him on the brief.

Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and MATTHES, Circuit Judges.

JOHNSEN, Chief Judge.

Since 1956, petitioners, as owners of 250 out of 11¼ million shares of issued stock in Union Electric Company, have been challenging, by petitions for review under 15 U.S.C.A. § 79x(a), the orders which the Securities and Exchange Commission has made on the declarations filed by management for purposes of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79a et seq.

The proceedings which have been before us up to this point have all involved management's declarations of proxy material for the annual stockholders' meetings which have been held. See Dyer v.

Securities and Exchange Commission, 8 Cir., 287 F.2d 773; Dyer v. Securities and Exchange Commission, 8 Cir., 266 F.2d 33; Dyer v. Securities and Exchange Commission, 8 Cir., 289 F.2d 242.

The present case differs from the previous ones in that it represents a challenge to an order of the Commission on a declaration filed by Union Electric in 1959, under 15 U.S.C.A. §§ 79f and 79g, for approval of an offering and sale of 1,036,602 additional shares of common stock of the corporation.

Union Electric's articles of incorporation had been amended at the annual stockholders' meeting of 1958 to increase the amount of its authorized common stock by 1½ million shares. Petitioners had at that time made attack upon the portion of the Commission's order (as well as upon all other parts of the order) which allowed management's declaration to become effective for a submission of the stock-increase amendment at the meeting and for the solicitation of proxies in relation thereto. We affirmed this aspect (as well as all other aspects) of the Commission's order in Dyer v. Securities and Exchange Commission, 8 Cir., 266 F.2d 33, 44, and that affirmance became final by the denial of certiorari, 361 U.S. 835, 80 S.Ct. 86, 4 L.Ed.2d 75, and of rehearing, 361 U.S. 911, 80 S.Ct. 253, 4 L.Ed.2d 181.

After our affirmance but before the denial of certiorari thereto, Union Electric, to enable it to carry out its financing program, filed a declaration with the Commission, as previously indicated, for authorization, under 15 U.S.C.A. §§ 79f and 79g, to make offering to its common stockholders of 1,036,602 shares of its stock, during the period from September 10, 1959, to September 30, 1959, on the basis of a right to subscribe for one share of additional common stock for each ten shares of such stock held of record on September 10, 1959. Transferable subscription warrants for the amount of stock which they would be entitled to purchase were to be issued to the stockholders, the warrants to be in tenth-of-a-share amounts. It was expected that the rights would be subject to being traded on the New York Stock Exchange.

The declaration further provided that any shares of the offering not thus subscribed for by the stockholders were to be offered to the employees (excluding elected officers). If the stock failed to be thus completely absorbed, any remaining shares were to be subject to purchase by underwriters on a competitive bid basis, as related to the fixed subscription price, in accordance with the Commission's Rule U–50, 17 CFR, § 250.50.

The price at which the offering would be made was to be subject to the determination of the board of directors on September 9, 1959, but this figure was to be "not less than 8% under the closing price per share of Union's common stock on the New York Stock Exchange on the date of such determination". The subscriptions were to be paid for in cash and, to enable employees to make such payment, arrangements had been effected with a St. Louis bank, whereby they could obtain loans on their stock, under a payroll deduction agreement, in an amount up to 90% of the purchase price.

The things which are being set out in the present paragraph have occurred since the Commission's order was made, but they may be noted informationally. The price set by the board of directors for the offering on September 9, 1959, was approximately 8% under the closing price of the stock on that date on the New York Stock Exchange. Common stockholders and purchasers of their warrants made subscription for a total of 96% of the amount of the stock offering. The 4% remaining was all taken by the employees, so that no part of the stock went to underwriters. Petitioners exercised their subscription privilege and received the 25 shares to which they were entitled under the provisions of the declaration.

Filing of the declaration with the Commission had been made on August 7, 1959. On August 17, 1959, the Commission gave notice of the filing and the terms of the declaration, through publi-

cation in the Federal Register. The essential aspects of the proposed offering, as detailed above, were set out in the notice. The corporate purposes for which the proceeds of the sale were intended to be used were stated. And it was indicated that the Public Service Commission of Missouri and the Illinois Commerce Commission, according to the declaration, also had jurisdiction over the issuance and sale of the stock. The notice further contained a provision "that any interested person may, not later than September 2, 1959, at 5:30 P.M., request in writing that a hearing be held on such matters, stating the nature of his interest, the reasons for such request, and the issues of fact or law raised by said filing which he desires to controvert; or he may request that he be notified if the Commission should order a hearing thereon".

In addition to the publication of notice made in the Federal Register, the Commission (presumably because of its past experience with petitioners) took the precaution of mailing a copy of the published notice to petitioner J. Raymond Dyer, who was attorney for his daughter and himself. Dyer made response thereto by letter dated August 20, 1959, acknowledging receipt of the copy of the notice and stating that whether or not he and his daughter might request a hearing would depend upon when it would be held; that, if the Commission would set a hearing date convenient to them, they would request a hearing; but that no date prior to September 25, 1959, would be thus convenient to them. Under Union Electric's declaration, the date on which it was desired to commence offering the stock was September 10, 1959.

The letter further stated that the basis of any hearing request which the Dyers might make would be "to permit us to make a record on the issues of fact and law we controvert"; that "these issues" were that "factually" Union Electric did not have "1,036,602 lawfully authorized and unissued shares of common stock"; that the Commission's 1958 order, which had allowed management's declaration to

become effective for submitting the proposed amendment to increase the authorized common stock by 1½ million shares, and which thus underlay the adoption of the amendment, was then pending on petition for certiorari to our affirmance of the order in Dyer v. Securities and Exchange Commission, 8 Cir., 266 F.2d 33; and that legally petitioners wanted "to controvert any assumption on the part of the Commission" that it had a right to accord administrative effect to its 1958 order in this or any other respect "while the aforesaid review proceedings are pending".

The capacity under § 79x(b) of an unstayed order of the Commission to have administrative operation and effect has been twice discussed and declared by us, in Dyer v. Securities and Exchange Commission, 8 Cir., 266 F.2d 33, and in Dyer v. Securities and Exchange Commission, 8 Cir., 289 F.2d 242.

On September 3, 1959, the Commission entered an order allowing management's declaration for the issuance and sale of the stock to become effective. The order stated that the Commission had duly considered the request and objections of the Dyers and regarded them as being without any protest merit or as not presenting any contendable issue, and as thus not providing adequate grounds for holding a hearing in the situation.

■ We think that clearly petitioners' objections did not present any question of fact or any question of law or any mixed question which could be affective of the Commission's exercise of authority under §§ 79f and 79g, and which might require a resolution of some material controverted element in relation to it, so that there existed no possible basis in the situation for a contention that it was an abuse of discretion for the Commission not to have held a hearing.

The Commission's obligation in the matter presented by the declaration and the basis on which it was authorized to discharge that responsibility are set out in subsections (c) to (g) of § 79g. Under subsection (c), the Commission could

not permit a declaration "regarding the issue or sale of a security" to become effective unless it found certain specified things as to the security. These things the Commission's order here duly covered, and all of them were warranted in being found to exist on the showing contained in the declaration, as to which there was no factual challenge.

Under subsection (d), if the requirements of subsections (c) and (g) were satisfied, the Commission was required to permit the declaration to become effective, unless it should find that certain adverse things specified in the subsection too were present in the situation. The Commission did not find any of these adverse things to be present, and there was nothing to require it to make such a finding. To the contrary, it specifically found that "no adverse findings are necessary".

The requirements of subsection (c) were duly satisfied, as we have stated above. Similarly, within the Commission's responsibility, the requirements of subsection (g), dealing with the Commission's right to be satisfied that state laws applicable to the issue or sale of the security involved had been complied with, were, as stated above, sufficiently met by the applications for approval which had been filed with, and the orders of approval which had been entered by, the Public Service Commission of Missouri and the Illinois Commerce Commission.

Accordingly, it was administratively proper for the Commission summarizingly to conclude and direct as it did:

"The Commission * * * finding that the applicable standards of the Act and the rules promulgated thereunder are satisfied and that no adverse findings are necessary; and the Commission deeming it appropriate in the public interest and in the interest of investors that said declaration as amended be permitted to become effective:

"It is ordered, pursuant to the applicable provisions of the Act and rules thereunder, that said declaration as amended be, and hereby is, permitted to become effective forthwith, subject to the terms and conditions prescribed in Rules 24 and 50, promulgated under the Act".

The petition for review, as petitioners' letter of objection to the Commission had done, challenges the right of the Commission to accord any recognition or effect to the capital stock increase voted at the 1958 stockholders' meeting, as a basis for its order here of authorization to issue and sell some of such stock. Petitioners' contention is, as previously indicated, that the voting of the stock increase had been effected on the basis of the Commission's proxy-declaration order for that meeting; that, since this order was then pending on judicial review, it could not, during that period, even though unstayed, be regarded as having validity or be allowed to have operational effect; and that therefore the Commission could not accord any recognition to the stock-increase amendment adopted at the meeting for purposes of its order here.

This contention, in the relation of 15 U.S.C.A. § 79x(b) thereto, has, as noted in our comments on petitioners' letter of objection to the Commission, been twice answered by us and need not be further considered or discussed. See Dyer v. Securities and Exchange Commission, 8 Cir., 266 F.2d 33, at pages 41–42; and Dyer v. Securities and Exchange Commission, 8 Cir., 289 F.2d 242, at pages 243–247. Our previous holding on the question also leaves no room for petitioners to attempt to reassert here, as they do, the objections which they had made to the approving by the Commission of management's proxy material for the 1958 meeting.

Petitioners, in their briefs, have engaged in reaching out beyond the question to which their letter to the Commission was confined. Section 79x(a) of 15 U.S.C.A. provides that "No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission or unless there were reason-

able grounds for failure so to do". One of the purposes of this provision—as of the provision allowing an order to have operation and effect unless specifically ordered stayed by the reviewing court—manifestly was to prevent any thwarting or hampering of the Commission's general regulatory functions by legal tactics such as petitioners have here employed.

Petitioners have not shown any reasonable grounds for their failure to have urged before the Commission the additional objections which they now undertake to assert, if any of these could be said to have had any merit. The reaching-out engaged in here appears to be simply part of the continuous germinative process, which has been present in all of their review proceedings, of adding, compounding and refining contentions, whenever an opportunity for making further expression has been available to them.

■ Of course, the provision of § 79x (a) quoted above relates only to such matters as could properly be factors in the administrative consideration and conclusion which the Commission is called upon to make. These would be things which a party would have a right to urge but which he might also waive. The provision would not preclude a court from setting aside an order of the Commission for illegality, from being violative of some controlling statutory command or prohibition, whether of state or federal law, intended in the public interest.

■■ But none of petitioners' added contentions comes within this category. They attempt to argue that the Commission's approval of the offering to employees of the stock not initially subscribed for by shareholders was a violation of their preemptive rights. If, however, any such preemptive right of residual subscription did exist in their favor, the provision in the plan for the offering of this stock to employees would not constitute an illegality, as referred to above, but merely a breach by the corporation of petitioners' personal rights.

A stockholder has a remedy under Missouri law for any disposition of its stock made by the corporation in breach of his rights, by a suit for the damages which he has sustained thereby. Knapp v. Publishers, George Knapp & Co., 127 Mo. 53, 29 S.W. 885, 890.

Here, if a preemptive right of residual subscription existed in favor of petitioners, they were deprived by the offering made to the employees of warrant rights for one additional share of stock. This amounted to a pecuniary difference —if petitioners concern was to increase their stock holdings—between the New York Stock Exchange price for Union Electric stock and the price at which petitioners would have been entitled to purchase it on subscription warrant, of approximately $3.00. As to the two intervenor-petitioners, whose names we have permitted to be added in the proceeding at the urging of petitioners, still smaller sums would be involved.

Because, however, of the repeated charges and innuendoes which petitioners have been making against the Commission in all of their review proceedings, we deem it appropriate to dispel any possible implication that, although the Commission's order was entitled to be regarded as administratively valid and proper on this review proceeding, the Commission might, in its consideration of Union Electric's articles of incorporation, which were before it in the filed declaration, have overlooked or ignored some stockholders' rights, existing under the articles.

■ There is no provision in the articles of incorporation for residual preemptive rights as to any stock not taken by other stockholders on a proportional offering. Nor can any such right to residual preemption be claimed to exist either expressly or inherently under Missouri law. There is no statute making provision for such a residual preemption. And Maynard v. Doe Run Lead Co., 305 Mo. 356, 265 S.W. 94, has refused to recognize such a right as existing on an in-

herent or traditional basis. The opinion in that case said, 265 S.W. at page 98:

"The plaintiff asserts that 3,000 shares of that stock [increase] were sold at par to others than stockholders. Evidently that was because the stockholders did not want it, which was no concern of his, because he got his proportion, and persons buying that increase paid money which became assets of the corporation, and his relative interest was neither increased nor diminished by reason of that sale."

The historic basis for the recognizing of general preemptive rights is "that the stockholder is entitled to maintain his proportional interest in the corporation." Hayes v. St. Louis Union Trust Co., 317 Mo. 1028, 298 S.W. 91, 97, 56 A.L.R. 1276. That proportional interest is maintained by a stockholder being afforded the opportunity to subscribe for his proportional share of any block of additional stock issued by the corporation. His position in such a situation, in respect to either assets or voting strength, does not become any different, whether the new stock is all taken by the existing stockholders, or whether some part of it which is not so taken is thereafter sold to others on the same basis.

In such a situation, "the reason of the rule has been satisfied and his proportionate interest and voice in corporate control and management has been preserved unimpaired; and his right does not extend to the new shares not taken by his fellow stockholders who have failed to exercise their pre-emptive rights * * * ". 11 Fletcher Cyclopedia Corporations, Perm.Ed. § 5138, p. 310.

This scope of preemptive right also has in it the element of necessary commercial practicality, particularly where corporations of general public investment, with their complex stock structure and numerous individual stockholders, are involved.

Thus here, the number of shares of stock as to which petitioners contend that the stockholders had residual preemptive rights was substantially less than the number of stockholders. The difficulties which this could entail, as well as the delay which might be caused to the corporation's financing program by any such residual process, emphasize the rationality of the scope of preemptive rights recognized in the Maynard case, supra. Further, it may be noted that on petitioners' theory of such rights, if all the residual stock were not taken on a reoffering, the process would presumably have to be repeated and repeated until there was a reaching of infinity. Finally, it should be observed that the Missouri statutes, in apparent recognition of these realities, authorize a corporation to deny preemptive rights entirely in its articles of incorporation. Mo.R.S.1959 § 351.305, V.A.M.S. § 351.305. A corporation could no doubt, by special provision in its charter, allow such residual preemptive rights as petitioners contend for, but, as indicated, they do not exist under Union Electric's articles.

■ In what we have said, it has not been necessary to determine whether under Union Electric's articles the stockholders had in fact a preemptive right to the stock which was proportionately offered them. It is sufficient simply to declare that in any event such a preemption as was accorded them by the corporation satisfied any rights which could be so claimed to exist to them, and that thus there had been no violation of any charter provision in the Commission's administrative approval of the stock-sale plan.

Within neither the objection which petitioners here had the right to assert nor any of the other objections which they have attempted to raise, is the Commission's order required or entitled to be reversed.

Affirmed.