SARAH ADELE HAYES, JOSEPH JEROME HAYES, ROBERT MAGNOR HAYES and SARAH MCCALMONT HAYES, RUTH O. HAYES, and RUTH O. HAYES, Administratrix of Estate of George Hayes, v. ST. LOUIS UNION TRUST COMPANY and FLORENCE AGNES HAYES WHEELER as Trustees under Last Will of Joseph M. Hayes, FLORENCE AGNES HAYES WHEELER, MARIE A. HAYES STURGES, THOMAS RUSH STURGES, HAYES STURGES and KNIGHT STURGES, Appellants.— 298 S. W. 91.

Division One, September 16, 1927.

1. **WILL: Construction: Trust Estate: Stock Dividends: Intention.** In determining whether stock dividends upon stock bequeathed to trustees for the use and benefit of testator's children are income to be turned over to the beneficiaries, or merely accretions to the principal or **corpus** of the trust estate to be held by the trustees until the period of final distribution, the controlling question is the testator's actual intention, to be discerned from the will itself if that can be done, but from the language of the will illuminated by competent and material extrinsic evidence concerning the subjects and objects of the bequests, insofar as ambiguity may lurk behind the written provisions of the will.

2. **STOCK DIVIDENDS: Income: Collection: Capital Increment.** Under the provision of a will declaring that "said trustees shall collect the income, rents, issues and profits of the trust estate, and dispose of the net income from said property" to testator's children, everything in the nature of a return collected from the trust estate should be credited to the income account, but to be so credited it must be a return, not simply a capital increment, and it must be collected.

3. ———: **Net Income: Preference for Children: Advancements: Spendthrift Trust.** Where the will placed testator's residuary estate in trust, the net income therefrom to be paid in equal shares to his children and their descendants, **per stirpes,** until the death of his last surviving child, and directed that the principal and undistributed income should then be divided equally, **per stirpes,** among his grandchildren then living and the descendants of such as might be deceased, and among the trust assets were two hundred shares of the capital stock of a tobacco company, which later declared a large stock dividend and issued stock to the amount thereof to the trustees, and the question for decision is whether such dividend stock constitutes income or increments to the principal, it cannot be ruled that the

testator entertained greater affection for his children than for his grand-children or remaindermen and that therefore the dividend stock constitutes income, where the will exacted repayment out of the income of advancements made to his children, but exempted the final beneficiaries from such payments out of the corpus of the estate, and threatened with disinheritance any beneficiary who resisted the will—a provision obviously directed at his children rather than the three minor grandchildren—and the trust created is a spendthrift trust. Under such circumstances no meaning can be attached to the words "net income" other than the law itself would give them unaided when applied to stock dividends.

4. ———: ———: **Ascertained: Payment in Money or Specie.** Where the will gives to life beneficiaries the net income of a trust estate, to ascertain the net income the estate must be looked to in solido, and the expenses substracted from the gross receipts; but where the financial condition of the estate does not preclude the distribution of dividend stock as net income, and there is no clear testamentary direction that installments of income shall be paid in money, a suit based on a contention that the dividend stock constitutes income should be treated as a case involving the title to the stock **in specie.**

5. ———: **Income or Corpus: Trust Estate: Value.** If the trust estate consists of corporate stock, the principal or **corpus** of the estate consists of the corporate stock itself, and not its value at any given time; and if the corporate stock so held in trust increases in value through the accumulation of corporate earnings after the beginning of the trust, and if no dividends are declared, the whole increase belongs to the **corpus,** even upon a sale of the stock.

6. ———: ———: ———: **As Between Life Tenants and Beneficiaries.** Where corporate stock is sold by a corporation and it realizes a premium, the profit is regarded as an increment to the corporate capital, and not as income, in measuring the rights of life beneficiaries and remaindermen to the income from stock of the corporation.

7. ———: ———: **Earnings: Consent.** The earnings and profits of a corporation remain the property of the corporation until severed from corporate assets and distributed as dividends. They may be transferred to the corporation's fixed capital and a stock dividend declared, but if thereby the enlargement of the capital stock exceeds the limit of the corporation's authorized capitalization the laws of this State require that the consent of the stockholders to the stock dividend be obtained.

8. ———: ———: **Units of Interest: New Shares.** The outstanding shares of stock are simply units of interest in the corporation, as conducted by its directors, officers and (in some matters) shareholders. The aggregate stockholdings of a shareholder represent his fractional interest in the corporation, and not a mere investment of money. The law gives a shareholder the right to subscribe for new stock issued, the reason being that he is entitled to maintain his proportionate interest in the corporation, and the rule applies where the stock is issued as a stock dividend offsetting net profits previously earned and therefore represented by the original stock at its enhanced value.

9. ———: **Dividend: Severance.** A stock dividend is in no true sense dividend. A dividend implies a division, a severance from the corporate assets to the amount of the dividend, and a distribution thereof among the stockholders. A stock dividend is the increasing of the fixed capital of the corporation; it takes nothing from the corporation; it gives nothing to the shareholder; the title to all corporate property remains in the corporation as before, and the proportional interest of the stockholder continues the same.

**10. STOCK DIVIDENDS: Income: Trust Estate.** Under a will giving corporate stock to trustees and the income therefrom to lifetime beneficiaries, stock dividends are not income, for they have not been severed from the corporate assets, but are simply an enlargement of the corporate stock, without a proportional increase in interest in the corporation, and cannot be claimed by such beneficiaries, but belong to the trustees.

**11. ――――: Income or Corpus: Trust Estate: Massachusetts Rule.** Under a will by which testator gave certain assets to trustees and required them to collect the income, rents, issues and profits of the trust estate and distribute the net income to his children during their lives, and the principal or **corpus** of the estate, upon the death of the last surviving child, to their descendants, and the trust estate consisted of two hundred shares of the capital stock of a tobacco company, and after his death the company declared a seventy-five per cent stock dividend and thereafter issued to the trustees stock certificates for one hundred and fifty shares of the stock, the corpus or principal of the trust estate is the corporate stock itself, and the stock dividend cannot be distributed to the lifetime beneficiaries as income, because they represent no money or property severed from the corporate assets, but are an accretion to the **corpus** or principal of the trust estate, and belong to the trustees, until the period of final distribution of such corpus, just as does the original stock bequeathed by the will. This is the Massachusetts rule, which exposes income to no worse hazards from corporate mismanagement and mischance than does the Pennsylvania rule, and does not otherwise seem more unjust or unworkable.

Corpus-Juris-Cyc. References: **Corporations**, 14 C. J., Section 506, p. 384, n. 46; Section 522, p. 394, n. 37; Section 730, p. 495, n. 68; Section 1207, p. 798, n. 47; Section 1208, p. 799, n. 50; Section 1234, p. 812, n. 80; Section 1257, p. 829, n. 54; Section 1260, p. 831, n. 76; Section 1261, p. 832, n. 81; Section 1262, p. 834, n. 90; 14a C. J., Section 1873, p. 108, n. 23. **Estates,** 21 C. J., Section 81, p. 946, n. 68; Section 246, p. 1041, n. 48. **Trusts,** 39 Cyc., p. 444, n. 15, 19. **Wills,** 40 Cyc., p. 1386, n. 85; p. 1788, n. 30, 31; p. 1790, n. 36.

Appeal from Circuit Court of City of St. Louis.—*Hon. Moses Hartman,* Judge.

REVERSED AND REMANDED (*with directions*).

*Bryan, Williams & Cave* for appellants.

(1) Since the testator "has given no special direction upon the question as to what shall be considered principal and what income, he must be presumed to have had in view the lawful power of the corporation over the use and apportionment of its earnings and to have intended that the determination of that question should depend upon the regular action of the corporation with regard to all its shares." Gibbons v. Mahon, 136 U. S. 549, 559; Bouch v. Sproule, L. R., 12 App. Cas. 397; D'Ooge v. Leeds, 176 Mass. 558; Lamb v. Lehman, 110 Ohio St. 59. (2) The right which a shareholder in a corporation has by reason of his ownership of shares is a right to participate, according to the amount of his stock, in the surplus profits of the corporation on a division and ultimately, on its dissolution, in the assets remaining after the payment of its debts. Armour Bros. Banking Co. v. National Bank, 113 Mo. 12; Eisner v. Macomber, 252 U. S. 189; Gibbons v. Mahon, 136 U. S. 549; Van Allen v. Assessors, 3 Wall.

573; Plimpton v. Bigelow, 93 N. Y. 592; Tubb v. Fowler, 118 Tenn. 325; 1 Cook on Corporations (8 Ed.) sec. 12, p. 66; Fisher v. Essex Bank, 5 Gray, 373. (a) The stockholder has no inchoate or other legal right to the earnings or profits of the company until the dividends have been declared. In no legal sense are the individual stockholders the owners of the earnings or profits of the company. Gibbons v. Mahon, 136 U. S. 549; 2 Beach on Private Corporations, sec. 202; Eisner v. Macomber, 252 U. S. 189; Lamb v. Lehman, 110 Ohio St. 59. (b) The property of a corporation and the shares of stock therein are separate and distinct kinds of property and belong to different owners, the first being the property of the artificial person—the corporation—the latter, namely, the shares of stock, being the property of the individual owners thereof. Van Allen v. Assessors, 3 Wall. 573; Gibbons v. Mahon, 136 U. S. 549; Bank v. Tennessee, 161 U. S. 134; Shelby County v. Bank, 161 U. S. 149; Illinois National Bank v. Kinsella, 201 Ill. 31; Greenleaf v. Board of Review, 184 Ill. 226; Trust Co. v. Mason, 152 N. C. 660; 5 Fletcher, Cyc. Corp., sec. 3417, p. 5597; 14 C. J. 388; 2 Purdy's Beach on Priv. Corp., sec. 557, pp. 799, 801; 1 Morawetz, Priv. Corp. (2 Ed.) sec. 233, p. 227. (c) "Certainly the interest of a stockholder is a capital interest and his certificates of stock are but the evidence of it. They show that he or his assignors, immediate or remote, have contributed capital to the enterprise and that he is entitled to a corresponding interest proportionate to the whole, entitled to have the property and business of the company devoted, during the corporate existence, to the attainment of the common objects, entitled to vote at stockholders' meetings, to receive dividends out of the corporation's profits if and when declared, and, in the event of a liquidation, to receive a proportionate share of the net assets, if any, remaining after paying creditors. Short of liquidation or until dividend declared, he has no right to withdraw any part of either capital or profits from the common enterprise. On the contrary, his interest pertains not to any part, divisible or indivisible, but to the entire assets, business and affairs of the company. Nor is it the interest of an owner in the assets themselves, since the corporation has full title, legal and equitable, to the whole." Eisner v. Macomber, 252 U. S. 189; Gibbons v. Mahon, 136 U. S. 549; Security Trust Co. v. Rammelsberg, 82 W. Va. 701. (d) A stock dividend is, in its essence, not a dividend at all, but rather the opposite. No part of the assets of the company is separated from the common fund, nothing distributed except paper certificates that evidence an antecedent increase in the value of the stockholder's capital interest resulting from the accumulation of profits by the company, but profits so far absorbed in the business as to render it impracticable to separate them for withdrawal and distribution. Eisner v. Macomber, 252 U. S. 189; Lamb v. Lehman, 110 Ohio St. 59; Kaufman v. Charlottesville Woolen Mills Co., 93

Va. 673; Trust Co. v. Mason, 152 N. C. 660. (e) The essential and controlling fact in the case of a stock dividend is that the stockholder has received nothing out of the company's assets for his separate use and benefit. Enrichment through increase of value of capital investment is not income in any proper meaning of the term. Eisner v. Macomber, 252 U. S. 189; Gibbons v. Mahon, 136 U. S. 549; DeKoven v. Alsop, 205 Ill. 309; Lamb v. Lehman, 110 Ohio St. 59. (3) The plain, simple, logical rule, therefore, is that a stock dividend, regardless of the source of the corporate assets upon the basis of which it is declared, is not income to the shareholder at all, but is a part of the share of the *corpus* of his interest. Gibbons v. Mahon, 136 U. S. 549; DeKoven v. Alsop, 205 Ill. 309; Billings v. Warren, 216 Ill. 281; Jackson v. Maddox, 136 Ga. 31 (code provision); Thatcher v. Thatcher, 117 Me. 331; Harris v. Moses, 117 Me. 391; Trust Co. v. Mason, 152 N. C. 660; Humphrey v. Lang, 169 N. C. 601, L. R. A. 1916B, 626; Newport Trust Co. v. Van Rensselaer, 32 R. I. 231, 35 L. R. A. (N. S.) 563; Kaufman v. Woolen Mills Co., 93 Va. 673; Security Trust Co. v. Rammelsberg, 82 W. Va. 701; Boardman v. Boardman, 78 Conn. 451; Bulkeley's Executor v. Worthington Ecclesiastical Soc., 78 Conn. 526; Boardman v. Mansfield, 79 Conn. 634, 12 L. R. A. (N. S.) 793; Minot v. Paine, 99 Mass. 101; D'Ooge v. Leeds, 176 Mass. 558; Coolidge v. Grant, 251 Mass. 352; Lamb v. Lehman, 110 Ohio St. 59; Bouch v. Sproule, L. R. 12 App. Cas. 385, 397; Internal Revenue Commission v. Blott, 2 A. C. 171; In re Ogilvie, 88 L. J. Ch. 159; In re Thomas Green Carson, Irish Rep., vol. 1, p. 321; 25 Halsbury's Laws of England, pp. 607, 609. (4) Any rule which, like the Pennsylvania rule, would hold that a stock dividend is to be declared income or *corpus* according to the original source of that part of the corporate assets upon which the corporation based its action in declaring such dividend—or upon the time when the values upon which the stock dividend is based, were acquired by the corporation—would involve a judicial attempt to "hunt back" through the mazes of corporate history in order to analyze the present assets of the corporation and thereby to discover the time when and the source from which they were acquired, and thus require the bringing into the field of investigation a most critical and intimate inquiry into all the affairs of the corporation—covering possibly a long period of years. "How expensive, harassing to parties and the corporation; impracticable, speculative and impossible of intelligent result such proceedings would be is apparent." Bulkeley's Executor v. Worthington Ecclesiastical Soc., 78 Conn. 526; Scholefield v. Redfern, 32 L. J. Ch. 627; Gibbons v. Mahon, 136 U. S. 549; D'Ooge v. Leeds, 176 Mass. 558; Lord Eldon in Irving v. Houston, 4 Paton, 521; 34 Yale L. J. 199.

*William J. Doherty* for respondents.

(1)   The language of the will directs the trustees to "take charge
and possession of said rest and residue of my estate, collect the in-
come, rents, issues and profits thereof and therefrom, and after de-
ducting all proper and legal charges and expenses incident to the
management of said property and the execution of the trusts herein
and hereby created, dispose of the net income from said trust prop-
erty" to the testator's surviving children and the descendants of
any deceased child.   This language clearly evinces a comprehensive
intention on the part of the testator that whatever was in the nature
of profits upon, or income of, the trust fund, should be fully enjoyed
by the life beneficiaries.  Lowry v. Farmers L. & T. Co., 172 N. Y.
137; U. S. Trust Co. v. Heye, 224 N. Y. 242; Robertson v. DuBrule-
tour, 184 N. Y. 201.   (2)   The words "net income" used by the tes-
tator are clearly to be understood as meaning what is left of the
"income, rents, issues and profits" after deducting charges and ex-
penses of administration.   (3)   In construing the will as to the
rights of the life tenants and remaindermen to stock dividends, the
intention of the testator is to be ascertained, and if no rules of law
are violated the courts will, if possible, carry such intention into ef-
fect.   McLouth v. Hunt, 154 N. Y. 179; Hite v. Hite, 93 Ky. 257; In
re Boyers Appeal, 224 Pa. St. 144; Thomas v. Gregg, 78 Md. 545;
Bryan v. Aiken, 10 Del. Ch. 446-453.   The question whether a
distribution made by a corporation during the continuance of a life
estate belongs to the life tenant or to the remainderman or, in other
words, to be regarded as income or capital, is primarily a question
of the intention manifested by the will.   Gibbons v. Mahon, 136 U. S.
549; Spooner v. Philips, 62 Conn. 62; Carter v. Crehore, 12 Haw.
309; Thomas v. Gregg, 78 Md. 549; Re Heaton's Estate, 89 Vt. 550;
McLouth v. Hunt, 154 N. Y. 179; Boyers Appeal, 224 Pa. St. 144.
(4)   In construing the will the court will consider not only the lan-
guage employed, but the conditions and the relations of the parties
and all the circumstances of the case, and will, in so far as possible,
place itself in the position of testator.   Small v. Field, 102 Mo. 104;
Hall v. Stapleton, 65 Mo. 670; Munroe v. Collins, 95 Mo. 33; Lane v.
Garrison, 293 Mo. 530; Payne v. Reece, 297 Mo. 54.   (5)   The so-
called Massachusetts rule of determining the ownership of stock divi-
dends has been repudiated or condemned in many states.   It is called
a rule of convenience, but not of justice.   In re Heaton's Estate, 89
Vt. 550; Pritchet v. Trust Co., 96 Tenn. 472; 29 Harvard Law Re-
view, 551; Hite v. Hite, 93 Ky. 257; McLouth v. Hunt, 154 N. Y.
179; Bryan v. Aiken, 10 Del. Ch. 446; Wallace v. Wallace, 90 S. C.
61; Soehnlein v. Soehnlein, 146 Wis. 330; Smith's Estate, 140 Pa.
344; In re Osborne, 209 N. Y. 450; In re Boyer's Appeal, 224 Pa.
144; Goodwin v. McGaughy, 108 Minn. 248; United States Trust Co.
v. Heye, 224 N. Y. 242; Day v. Faulks, 79 N. J. Eq. 66; Carter v.
Crehore, 12 Haw. 309; Eisner's Estate, 175 Pa. 143; Lauman v.

Foster, 157 Iowa 275; Miller v. Payne, 150 Pa. 354; Sloan's Estate, 258 Pa. 368; Van Doren v. Olden, 19 N. J. Eq. 176; Brown v. Brown, 72 N. J. Eq. 667; Walker v. Walker, 68 N. H. 407; Holbrook v. Holbrook, 74 N. H. 201; Re Duffill, 180 Cal. 748; Stokes' Estate, 240 Pa. 277; Ballantine v. Young, 79 N. J. 70; Atlantic Coast Line Div. Cases, 102 Md. 73. (6) The question whether stock dividends are to be treated as income is one of first impression in Missouri. And this court is not bound by any rulings in the cases decided by the United States Supreme court or by any of the State supreme courts. The highest courts of the various States which have considered the question have adopted rules of construction which are at variance with each other, and in hopeless conflict, and are of little help. Hite v. Hite, 93 Ky. 257; McLouth v. Hunt, 154 N. Y. 179; Soehnlein v. Soehnlein, 146 Wis. 330; Lanning v. Tax Commissioner, 247 Mass. 496, 498. (7) Inasmuch as the stockholder has no legal right to the earnings or profits of the company until the dividends have been declared, it necessarily follows that the testator did not own any part of the accumulated earnings of the American Tobacco Company at the time of his death and that such earnings did not and do not form a part of the *corpus* of his estate. See cases cited by appellants under 3b. Brown v. Brown, 72 N. J. Eq. 667; Walker v. Walker, 68 N. H. 407; Holbrook v. Holbrook, 74 N. H. 201; Re Duffill, 180 Cal. 748; Stokes' Estate, 240 Pa. 277; Ballantine v. Young, 79 N. J. 70; Atlantic Coast Line Div. Cases, 102 Md. 73. The stockholder is, in that respect, at the mercy of the directors. And when the stockholder is a mere life tenant of that stock he may never receive anything. In the present case the larger portion of the testator's estate is invested in corporation stocks, and the life tenants are dependent on the income therefrom, but the directors have it in their power to beggar these life tenants by neglecting or refusing to declare dividends. It follows, as a matter of justice, that the courts will, in all such cases, seize every opportunity to hold that when the directors have declared a dividend out of the earnings of the corporation such dividend shall go to the life tenant as income. (8) The plain, simple, logical rule is that a stock dividend, if paid out of the earnings of the corporation, is income to the shareholder—and particularly so when that shareholder is a mere life tenant of the stock. Hite v. Hite, 93 Ky. 257; Bryan v. Aiken, 86 Atl. 674, 10 Del. 446; Cox v. Gaulburt, 148 Ky. 407; Thomas v. Gregg, 78 Md. 545. (9) The Kentucky rule is just, reasonable and easy of application, and it is the only rule that will carry out the evident intention of the testator in this case. Hite v. Hite, 93 Ky. 257; Cox v. Gaulburt, 148 Ky. 407; Bryan v. Aiken, 10 Del. Ch. 446; McLouth v. Hunt, 154 N. Y. 179; Lowry v. Farmers Trust Co., 172 N. Y. 137; Robertson v. De Brolatour, 188 N. Y. 301; In re Kernahan, 104 N. Y. 618; Clarkson v. Clarkson, 18 Barb. (N. Y.) 646; Riggs v. Cragg, 89 N. Y. 479.

ELLISON, C.—This is a suit to construe a trust declared in the will of Joseph M. Hayes, who died a citizen and resident of St. Louis on January 14, 1919. The plaintiffs are three of his children, together with the divorced wife and the widow-administratrix of another child who died after the institution of the suit. The defendants are the testamentary trustees and the testator's remaining living children and his grandchildren—the latter all minors and children of a living daughter. The answers of all of them joined in praying a construction of the will.

The will placed the testator's residuary estate in trust, the net income therefrom to be paid in equal shares to his children and their descendants, *per stirpes,* until the death of the last surviving child, when the then principal and undistributed income were directed to be divided equally, *per stirpes,* among his grandchildren then living and the descendants of any such as might be deceased. The trust assets included 200 shares of the common capital stock of the American Tobacco Company.

About fifteen months after Mr. Hayes's death, in May, 1920, the Tobacco Company declared a 75 per cent stock dividend payable August 1, 1920, out of its "Common Capital Stock B," which had all the rights of ordinary common stock except that it was non-voting. Pursuant thereto stock certificates for 150 shares of the stock were issued and delivered to the trustees. On September 1 and December 1, 1920, and March 1, 1921, respectively, the Company declared three further dividends of three per cent, payable March 1, 1923, in the same Stock B at par, and issued to the trustees scrip or dividend certificates therefor, each of the face value of $1050. At the maturity of the certificates the trustees received the stock called for thereby. The point in controversy is whether these stock and scrip dividends are "income" within the meaning of the will and as such go to the life beneficiaries—as the plaintiffs contend—or whether they constitute merely accretions to the principal or *corpus* of the trust estate—as the defendants maintain. It was decreed by the learned chancellor below that the trustees should charge themselves with the four dividends as trust income, and that the stock realized thereon should be distributed among the life tenants. The defendants have appealed. The puzzling question presented is one of first impression in this State.

The case has been twice argued here by able counsel, and by leave of court briefs have been filed by three *amici curiae.* There are nine briefs, citing or leading to the examination of more than three hundred authorities, in addition to a record of some length, which reviews the financial history of the American Tobacco Company since 1904 and sets out much statistical data pertaining thereto.

At the outset it is to be remembered that the question is nothing more or less than one of the testator's actual intention, if discernible from the will—illuminated by competent and material extrinsic evidence concerning the subjects and objects of the bequests, if and insofar as ambiguity with respect thereto may lurk behind the written provisions of the instrument. This rule of construction is inexorably followed in this State, and in all other jurisdictions in this country so far as we know. A proper consideration of the matter leads first, therefore, to a scrutiny of the will itself.

The will is dated September 30, 1915. There are two codicils, the first dated November 2, 1917, and the second December 14, 1918, just one month to a day before the testator's death. After providing in clause 1 for the payment of his debts, etc., and in clause 2 making a small specific bequest, clause 3 leaves the residuary estate to trustees, and continues as follows: "said trustees shall take charge and possession of said rest and residue of my estate, collect the income, rents, issues and profits thereof and therefrom, and after deducting all proper and legal charges and expenses incident to the management of said property and the execution of the trusts herein and hereby created, dispose of the net income from said trust property as follows, . . ." Then follow provisions requiring a division of "said net income" among his children and their descendants *per stirpes* until the death of the last surviving child, and directing that past and future advancements to his children be charged against "said income" due them, respectively. It is then provided that on the death of the last surviving child "the principal of and accumulated and undistributed income from said trust estate" shall be divided in equal shares among the testator's then living grandchildren and their descendants, *per stirpes*, following which appears a proviso that in the final distribution no advancement to a child shall be charged against the descendants of that child, together with directions respecting disbursements to minor distributees, either of principal or "net income." To this is added that "all payments of income" shall be in monthly installments as nearly equal as practicable and as nearly on the first day of the month as may be found convenient.

Clause 4 of the will forbids the anticipation by any distributee of his share of the principal of the trust estate or of "the net income therefrom or any installment of such income" by way of sale, hypothecation or other disposal thereof, and declares such distributive shares shall not be subject to the debts of the distributees until actually paid over to them; and that no devise or bequest to any female legatee shall be subject to any right, interest or control of any husband of hers.

The codicil of November 2, 1917, specifies that five per cent of the aggregate advancements made by the testator to his children living or survived by issue shall be charged annually against "the annual

net income" payable to such children or their descendants, respectively; and further provides that if any child or descendant resist the probate of the will or any codicil thereof, or contest the same, the bequests for such child or descendant shall be thereby annulled. The codicil of December 14, 1918, makes provision for the wife of one of his sons out of the "net income" bequeathed said son, during her lifetime, on specified conditions. Except as modified by this and the preceding codicil, the original will is ratified and confirmed.

From the foregoing summary it is apparent that the face of the will fails specifically to declare the testator's intention with reference to whether stock dividends should be regarded as principal or income. *Dehors* the will, evidence was admitted showing that the testator conducted in St. Louis an incorporated wholesale business in woolens, spending each year three or four months in the East. In 1913 he retired from business. He was a widower, and at the time of his death two of his daughters, both unmarried, lived with him. Another daughter was married and lived in Boston. His (then) three sons were all in business away from home, one, apparently, married and the two others single. Two of the eight children mentioned in the will died childless before the testator's death, and one afterwards. None of the children were self-supporting; at least, the father gave each a monthly allowance. He loved all his children. When he died his estate, realty excluded, appraised nearly $630,000, of which over seventy per cent was invested in stocks. The estimated value of the personalty in the trust was about $400,000. The assessed value of the trust realty was slightly over $120,000. The actual net income from the entire trust estate for the year ending August 6, 1923, was $41,000 in round numbers. The executors made final settlement June 15, 1920, and, apparently, the trust assets were surrendered to the trustees on or about that date, but neither the gross income nor the expenses of the trust estate for any period were given in evidence. The record does not reveal when the testator acquired the original 200 shares of common stock from which the dividends in controversy were derived, what he paid therefor, or the market value of the stock at any time.

A large part of the record is devoted to the corporate and financial history of the American Tobacco Company from the time of its organization in September, 1904, up to the year 1922. Much of this consists of tables giving the earnings, surplus and dividends for each year, and of resolutions passed by the board of directors and by the stockholders. It is obviously impossible to go into these facts and figures in detail. Suffice it to say that the respondents advance two theories: first, they lay claim to the whole of the four stock dividends (a) under their construction of the will, (b) and also under a rule of law designated as the "Kentucky rule;" and, second, if unsustained in their first contention, they claim a part

of the dividends under a rule of law known as the "Pennsylvania rule."

It was in support of this second theory that the statistical evidence was introduced. The gist thereof is that when the testator died on January 14, 1919, the American Tobacco Company had a surplus of $44,584,333.10; that after the testator's death the surplus had increased from earnings about $13,000,000 on August 1, 1920, when the 75 per cent stock dividend was declared. Inasmuch as this increase was earned after the death of the testator the respondents maintain they should be allotted a proportion of the shares of common stock B received by the trust estate on the four several stock dividends, representing that portion of the surplus earned after the testator's death, as compared with the whole surplus.

As the evidence fails to show when the testator acquired the 200 shares of stock upon which the disputed dividends were earned (except that it was before 1918), there is no way of telling what information he had concerning the earning capacity of the stock, or how far that consideration may have influenced him in making his will; but for the sake of such incidental information as it may give, we append a table of the dividends paid by the stock from the time he wrote the will in 1915:

| Year | Dividends |
|------|-----------|
| 1915 | 20% cash |
| 1916 | 20% cash |
| 1917 | 20% cash |
| 1918 | 20% cash scrip convertible into Stock B |
| 1919 | (10% scrip, Stock B, ( no cash option. (10% cash |
| 1920 | (10% cash (75% stock dividend of Stock B, ( 6% dividends of Stock B, payable 3, 1, 23 |
| 1921 | ( 3% dividend of Stock B, ( payable 3, 1, 23 ( 9% cash, |
| 19 | ( 4.75% stock of another ( corporation |
| 1922 | 12% cash. |

The foregoing is a sufficient, and perhaps too full, statement of the facts.

1. (a) We have already indicated our conclusion that the will on its face does not specifically declare the intention of the testator

with reference to whether the stock dividends in controversy are to be regarded as *corpus* or income. But inasmuch as respondents

**Profits.** earnestly urge a contrary view, the point calls for further discussion. They stress that provision of the will which says: ''Said trustees shall . . . collect the income, rents, issues and *profits* (of the trust estate) and after deducting all proper and legal charges and expenses incident to the management of said property and the execution of the trusts herein and hereby created, dispose of the *net income* from said property'' (italics ours) to the distributees. Respondents assert the meaning of the provision is broadened by the use of the word ''profits;'' and that the language signifies everything in the way of advantage or profit accruing to the trust estate, citing U. S. Trust Co. v. Heye, 224 N. Y. 242, 253-4, 120 N. E. 645. They therefore maintain that the trust clause may be epitomized in two equations: income, rents, issues and profits=gross income of every kind, including stock dividends; gross income—expenses—net income.

(b) It may readily be admitted, for the purpose of discussion, that everything in the nature of a return collected by the trust estate should be credited to the income account thereof—but it must be a *return*, not simply capital increment, and it must be *collected*. This

**Income.** raises, but does not answer, the ultimate question under consideration, as to whether stock dividends represent something actually going to the shareholder (the trust estate), or merely something going to the corporation itself and thereby swelling only the *corpus* of the trust, without adding to its income except as may indirectly result thereafter from an increased yield on the augmented *corpus*.

(c) A point is made, also, on the circumstance that the life beneficiaries of the trust are the testator's children, whereas the remaindermen are only grandchildren and perhaps lineal descendents unborn.

**Preference for Children.** It is suggested the testator had, presumably, greater affection for the former, and from this an inference is drawn that he intended them to receive stock dividends. We are not impressed with this argument, either in the light of the provisions of the will, the extrinsic evidence showing the relations between the parties, or of human nature itself. On the contrary, the fact that the will exacted repayment of advancements from the children and their descendants out of the income, but exempted the final beneficiaries from such payments out of the *corpus*; the fact that the trust is a spendthrift trust; and the fact that the testator a month before his death by codicil threatened with disinheritance any beneficiary who resisted the will—a provision obviously directed at his children, rather than the three minor grandchildren—all these considerations point rather to the conclusion that the testa-

tor desired the *corpus* of the estate to be held inviolate and intact. The proof that the children were improvident does not weaken this conclusion. To sum up the whole matter, we are unable to see anything in the will or the extrinsic evidence which warrants us in attaching to the words "net income" used in the trust clauses a meaning other than that which the law would give them unaided when applied to the subject-matter in litigation—stock dividends. To an inquiry on that point we now direct ourselves.

2. The will gives the life beneficiaries the net income of the *trust estate.* To ascertain the net income, the estate must be looked to *in solido* (Tuckerman v. Currier, 54 Colo. 25, 125 Pac. 210, Ann Cas. 1914 C, 599, 607) and the expenses subtracted from gross receipts.

**Money or Specie.** But since it is tacitly admitted the financial condition of the estate when the suit was filed did not preclude the disbursement of the dividend stock as "net income," and since there is no clear testamentary direction that installments of income shall be paid in money, we can and shall treat the case as involving the title to the stock *in specie,* as did the trial court.

3. (a) When the right to the income from corporate stock is separately lodged in the holder of a life or term estate—whether or not through an intermediary trust—the proper application of stock dividends as between the particular estate and the reversion or remainder presents a question which "has perplexed the courts of both this country and England for a century." [7 R. C. L. p. 289, sec. 266.] Concerning the problem it has been said: "Few legal questions present greater intrinsic difficulties, or have called forth a greater contrariety of views and opinions, as well as of practical results . . ." [Annotation: 12 L. R. A. (N. S.) 769.] For a survey of the many theories and formulas which have been advanced it will suffice to refer to the following: 14 C. J. pp. 829-34, secs. 1255-63; 7 R. C. L. pp. 289-92, sec. 266; 17 R. C. L. p. 630, sec. 21; Annotations: 54 Am. Rep. 264, 14 A. S. R. 633, 118 A. S. R. 162; 12 Ann. Cas. 650, 23 Ann. Cas. 1218, 35 Ann. Cas. 311; 16 L. R. A. 461, 12 L. R. A. (N. S.) 768, 35 L. R. A. (N. S.) 563, 50 L. R. A. (N. S.) 510, L. R. A. 1916 D, 211; 24 A. L. R. 9, 42 A. L. R. 448.]

In subsequent discussion, for convenience we shall use the term "income" in referring to the life or term beneficiaries, and the word *"corpus"* as representing the reversioners, remaindermen, or, in this case, the trust estate which holds the reversionary interest for the ultimate beneficiaries.

(b) The conflict of opinion seems to be confined to stock dividends representing *earnings*—that is to say, stock dividends based on capitalized surplus or net profits actually or presumptively traceable to such earnings. In the case of corporations engaged in a "wasting"

business, such as mining or timber cutting, etc., sometimes capital consumed in the regular course of operation is treated as earnings. With this exception there appears to be practical unanimity on the proposition that stock dividends go to *corpus* if attributable not to earnings but to *capital*—made available for distribution through unearned enhancement in the value of capital assets, liquidation, reduction of capital or the like. [7 R. C. L. p. 291; 17 R. C. L. p. 632; 14 C. J. p. 829; 24 A. L. R. 15, 92.] We are now attempting merely to state the general rules prevailing in other jurisdictions, and are not concerned with their soundness or specific application. As regards stock dividends based on earnings, three rules have grown up, the so-called Massachusetts rule, Pennsylvania rule and Kentucky rule. There is another called the American rule, but it is little more than a loose classification of all doctrine opposed to the Massachusetts rule, combining parts of the Pennsylvania and Kentucky rules.

4. Under the Massachusetts rule, broadly stated, cash or property dividends belong to income and stock dividends to *corpus*. [17 R. C. L. 630.] The theory is that in the case of cash and property dividends there is an actual severance of the subject of the dividend from the corporate assets, whereas stock dividends involve only readjustments of the corporate structure, the corporate assets remaining the property of the corporation as fully as they were before. The leading case is Minot v. Paine, 99 Mass. 101, 96 Am. Dec. 705, decided in 1868. In applying the rule, while the courts permit the corporate action in declaring the dividend to characterize the dividend—that is, whether it be cash or stock—yet they look to the substance of the act, rather than its form, in determining this question. The rule is followed in these jurisdictions: United States Court, Connecticut, Georgia, Illinois, Maine, Massachusetts, New York, North Carolina, Ohio, Virginia, West Virginia and Rhode Island; with serious doubt raised as to the latter State by a comparatively recent case. [Rhode Island Hospital Trust Co. v. Peckham, 42 R. I. 365, 107 Atl. 209.]

5. The Pennsylvania rule makes no distinction between cash dividends and stock dividends. It raises the presumption that the settlor of a trust covering corporate stock intended the stock to be the *corpus* or principal of the trust only to the extent of its book or intrinsic value at the beginning of the trust. The rule therefore allocates any extraordinary dividend from earnings, declared during the running of the life or term estate, by determining whether the basic earnings accrued before or after the trust began; if the former, it is awarded to *corpus;* if the latter, to income; if both, the dividend is apportioned accordingly. [14 C. J. 832, 17 R. C. L. 631, 7 R. C. L. 290.] The leading case is Earp's Appeal, 28 Pa. 368, decided in 1857. It will be seen that the effect of the rule is to make the money

value of the dividend-producing stock at the beginning of the estate the principal or *corpus* of the estate—rather than the stock itself. Starting from this premise, the rule disregards the form of the dividend and the corporate action in giving it that form. The doctrine is in effect in California, Iowa, Maryland, Minnesota, Mississippi, New Hampshire, New Jersey, Pennsylvania, South Carolina, Tennessee, Vermont and Wisconsin. Some of these states are not committed to the apportionment feature of the rule.

6. The Kentucky rule, likewise, makes no distinction between cash and stock dividends. The time when the dividend is *declared* is the criterion. Any dividends from earnings, cash or stock, ordinary or extraordinary, declared during the term of the principal estate, belong to income—without regard to whether such earnings accrued prior or subsequent to the beginning of the estate. [14 C. J. 834, 24 A. L. R. 38.] The leading case is Hite v. Hite, 93 Ky. 257, 20 S. W. 778, 40 A. S. R. 189, 19 L. R. A. 173, decided in 1892. The doctrine is followed in Kentucky and Delaware.

7. The Massachusetts rule has been criticised by some courts in other jurisdictions, and by text-writers and annotators. It has been characterized as a rule of convenience and not of justice. On the other hand the Pennsylvania rule has been commended and said to be growing in favor. This latter observation, however, seems not in accord with recent developments. The Supreme Court of Ohio in Lamb v. Lehmann, 110 Ohio St. 59, 143 N. E. 276, 42 A. L. R. 437, decided in 1924, adopted the Massachusetts rule, and in New York the rule appears to have been put into effect by a statute in 1926, both as regards income taxation (Laws New York 1926, vol. 1, p. 939, chap. 543) and general personal property law (Laws New York 1926, vol. 2, p. 1563, chap. 843). The Kentucky rule was followed in New York prior to 1913. In fact, until that time. [12 L. R. A. (N. S.) p. 775.] In that year in Re Osborne, 209 N. Y. 450, 103 N. E. 723, 50 L. R. A. (N. S.) 510, 35 Ann. Cas. 311, the Pennsylvania rule was adopted. Speaking of the legislative change from the Pennsylvania rule to the Massachusetts rule, the New York Court of Appeals recently said in People v. Gilchrist, 243 N. Y. 173, 153 N. E. 39, 41: "The rule previously applied had resulted in so many complications and obscurities as to be almost unworkable in practice. [United States Trust Co. v. Heye, 224 N. Y. 242, 120 N. E. 645; Bourne v. Bourne, 240 N. Y. 172, 148 N. E. 180.] It involved elaborate accountings for the purpose of determining how far the dividends were the result of profits accumulated before the creation of the trust, and how far the result of profits accumulated thereafter. The Legislature evinced its will that there should be an end to these complexities hereafter in the administration of the law of trusts."

8. The three doctrines may be summed up by saying the Massachusetts rule considers the *character* of the dividend, the Pennsylvania rule the *source* of the dividend, and the Kentucky rule the *time* of the dividend. In our opinion the first of these methods is more nearly correct.

9. (a) What is the principal or *corpus* of the estate in cases of this kind—is it the corporate stock itself, or its *value* at a given time? Undoubtedly, the former. If the trust asset were land, the fact would be clear. With reference to stock, the same **Income or** view is taken in other phases of trust administration, even **Corpus.** in those states following the Pennsylvania or **Kentucky** rule. For instance, it is uniformly conceded that if corporate stock, so held in trust, increase in value through the accumulation of corporate earnings after the beginning of the trust, and if no dividends are declared, the whole increase belongs to *corpus*, even upon a sale of the stock. [17 R. C. L. p. 632; 21 C. J. pp. 945-6, 1041; Annotations, L. R. A. 1915 C, 851, 13 A. L. R. 1009; Smith v. Hooper, 95 Md. 16, 26, 51 Atl. 844; First National Bank of Canton v. Mulholland, 123 Miss. 13, 85 So. 111, 13 A. L. R. 1000; Olcott v. Estate of Charles F. Hoffman, 127 Misc. Rep. 399, 216 N. Y. S. 267, 269; McCoy v. McCloskey (N. J. Eq., 1922) 117 Atl. 473, 474.]

(b) Another illustration: When a corporation issues new stock the market value of which is above par—not as a stock dividend, but for subscription and purchase—the appurtenant legal right of its stockholders to subscribe for the same at par is a valuable right, for **Increment.** they can take the stock and sell it at a profit, or sell the option or privilege; and yet this right is generally held to belong to *corpus*, even though the premium be due to surplus or net profits earned after the beginning of the trust. [17 R. C. L. p. 632; Annotations, 24 A. L. R. p. 84, 42 A. L. R. p. 458.] In the same way, where the new stock is sold by the corporation and it realizes the premium, the profit is regarded as an accretion to the corporate capital and not as income in measuring the rights of life tenants and remaindermen to the income from stock of the corporation. [Dickinson's Estate, 285 Pa. 449, 453, 132 Atl. 352.] These holdings can be justified on no other theory than that the dividend yielding *stock*, not its *value* when the trust began, is the principal or capital of the trust estate.

10. (a) The corporate stock being the true capital of the trust, no rule attempting to allocate stock dividends thereon can be fundamentally sound unless it consults the peculiar relation between a corporation and its stockholders, and the essential nature of corporate **Earnings.** stock and stock dividends. Considering these, it may be said without citation of authority (for the cases are in entire harmony on the point) that the earnings and profits of a

corporation remain the property of the corporation until severed from corporate assets and distributed as dividends. Until that time stockholders have no property interest therein. Control of the corporation is entrusted to its board of directors, and, of necessity they must be left free to deal with the corporate property as prudent management and the exigencies of the enterprise may suggest—so long as they act in good faith. Net profits may be paid out as dividends, or held against a rainy day, or treated as floating capital and invested in additional property, or, if permanent expansion of capital is desired, the profits may be transferred to the corporation's fixed capital and a stock dividend declared. In this last event, if the extension exceed the limit of authorized capitalization already fixed by the stockholders, their consent to any necessary enlargement or change is usually required (14 C. J. 495), certainly in this State. [Secs. 9740, 10159, R. S. 1919; Laws 1923, pp. 315, 362; Laws 1925, p. 168; Laws 1927, p. 388.] In this sense it may be said a stock dividend and the appropriation of corporate earnings thereto have the sanction of the stockholders, themselves, previously or contemporaneously given. Such consent of the stockholders of the American Tobacco Company was obtained in the instant case.

(b) The outstanding shares of stock are simply units of interest in the corporation, as conducted by its directors, officers and (in some matters) shareholders. They evidence an intangible right to participate according to the amount of stock held, in the immunities and benefits of the corporation. [Armour Bros. Banking Co. v. St. Louis Nat. Bank, 113 Mo. 12, 19, 20. S. W. 690; Richardson v. Busch, 198 Mo. 174, 95 S. W. 894; 7 Words & Phrases, p. 6477; 4 Words & Phrases (2nd Series) p. 566.] In other words, the aggregate stockholdings of a shareholder represent his fractional interest in the corporation, and not a mere investment of so much money. That this is true, is illustrated by the rule of law (already referred to) giving a shareholder the right to subscribe for new stock in proportion to his then holdings. One of the reasons assigned therefor is that the stockholder is entitled to maintain his proportional interest in the corporation. [14 C. J. 394; 7 R. C. L. 206; Stokes v. Continental Trust Co., 186 N. Y. 285, 78 N. E. 1090, and annotations in 12 L. R. A. (N. S.) 969; Knapp v. Publishers Geo. Knapp & Co., 127 Mo. 53, 72, 29 S. W. 885; Maynard v. Doe Run Lead Co., 305 Mo. 356, 370, 265 S. W. 97.] The rule applies alike whether his interest be great or small. Where the new stock is voting stock the right is of paramount importance. Where the stock is issued as a stock dividend offsetting capitalized net profits previously earned, and therefore already represented by the original stock at its enhanced value, the right is substantial and of material value.

*Units of Interest.*

(c)   A stock dividend is not in any true sense a dividend at all. The latter implies a *division,* a severance from the corporate assets of the subject of the dividend, and a distribution thereof among the stockholders.   [McLaran v. Crescent Planing Mill Co., 117 Mo. App.

**Stock Dividend.**   40, 93 S. W. 819; 14 C. J. p. 798; 5 Thompson on Corporations (2 Ed.) p. 84, sec. 5270.]   The issuance of a stock dividend is, in its last analysis, nothing more than an incident or process in corporation bookkeeping.   The important step is the increasing of the fixed capital of the corporation.   The outstanding shares of stock are increased to balance, either by adding to their number or raising their par value.   When the stock has no par value, it seems even this is unnecessary.   Nothing is taken from the corporation.   Nothing is given to the stockholders—rather the contrary, for corporate profits theretofore available for distribution in dividends are permanently appropriated to its fixed capital.   The title to all corporate property remains in the corporation as before. The proportional interest of each stockholder continues the same; the only change is in the evidence of his interest in the corporation— that is, the number of his shares of stock is increased and the book value of each share correspondingly decreased, or the face value of his shares of stock is raised to or toward what their intrinsic value was before.

(d)   What has been stated in the preceding three paragraphs is but a recapitulation of what has been better said in such cases as Gibbons v. Mahon, 136 U. S. 549, 34 L. Ed. 525, 10 Sup. Ct. Rep. 1057; Towne v. Eisner, 245 U. S. 418, 62 L. Ed. 372, 38 Sup. Ct. Rep.

**Income.**   158, L. R. A. 1918 D, 254; Eisner v. Macomber, 252 U. S. 189. 64 L. Ed. 521, 40 Sup. Ct. Rep. 189, 9 A. L. R. 1570; Lamb v. Lehmann, 110 Ohio St. 59, 143 N. E. 276, 42 A. L. R. 437. Many other well-reasoned authorities to the same effect are cited in the briefs.   The inescapable conclusion is that the integrity of the principal or capital of the trust estate cannot be preserved unless the appellant trustees. who are the corporate stockholders in this case, be accorded the same legal rights that any individual stockholder would be conceded without hesitation.   To say the stock distributed in stock dividends shall be taken away from them and turned over to the life beneficiaries is to deprive the trust estate of its proportionate interest in the corporation—the disaster of which would be apparent, if the principal stock in this case were 51% of the voting stock of a corporation and the dividend stock had similar rights.   The testator might have so provided in his will, but, unless his mere direction that the "net income" of the trust estate be paid to the life beneficiaries can be so construed, he did not do so; and logic and the analogies of the law forbid that construc-

tion. The stock dividends are not "income," for nothing has *come in* to the trust estate, in the sense of being severed from the corporation.

11. (a) Glancing, briefly, at the criticisms of the so-called Massachusetts rule, raised in a number of cases. It has been said that the application of this rule allows the directors of corporations to usurp the jurisdiction of the courts, by permitting corporate action **Massachusetts** instead of judicial investigation to determine what **Rule.** corporate earnings shall go to income and what to *corpus;* that the rule is an unjust rule of convenience, enforced because the courts shrink from the labor of making a just allotment of corporate earnings; and that boards of directors, by persistence in declaring stock dividends, may "starve" the life beneficiaries in trusts such as the one here.

(b) In our opinion these criticisms are not justified. If corporate action does in fact determine the status of corporate property, the courts ought to be bound by the fact. They are in other matters. The rule is not to be condemned for its simplicity. A long while ago it was said *Simplicitas est legibus amica, et nimia subtilitas in jure reprobatur.* [4 Coke, 5 b.] The intricacies of accounting met in the enforcement of the Pennsylvania rule are a source of embarrassment to the courts that follow it, and of expense and uncertainty to litigants, as well. Such investigations are, themselves, often inaccurate and arbitrary, but trustees hardly dare proceed without resorting to them. Finally, there is no injustice, so far as we can see, in regarding a life or term estate in capital stock, or its income, as a section of the full ownership with like advantages and disadvantages for the time being. The testator might have been deprived of cash income had the corporation declared only stock dividends in his lifetime; and yet he saw fit to purchase and hold the stock and leave it in trust for his progeny. He could have sold his dividend stock, it is true, but that would have whittled down his capital, and he says in the will this must not be done. He could have done the same thing by selling off fragments of his own original shares. A reference to the table of dividends set out on a preceding page of this opinion will show that no diminishment of cash income has followed in this case; but, regardless of that, the Massachusetts rule subjects income to no hazards worse than those to which the Pennsylvania rule exposes *corpus* from corporate mismanagement and mischance.

12. The basis of our ruling in this case is that the stock dividends were not income of the trust estate, but an accretion to the *corpus,* because of their nature and because they represent no money or property severed from capital assets. The converse of that ruling **Application** would be that money or property which is severed from **of Rule.** corporate assets by appropriate action of the governing body of the corporation and paid as dividends, would be income; but as to this further application of the rule, and

its relation to the distribution of capital assets, profits and earnings, we express no opinion, an adjudication of such questions being unnecessary to a decision of this case.

The judgment and decree are, accordingly, reversed, and the cause remanded with directions to enter a decree requiring the appellant trustees to account for the stock dividend of 150 shares of common capital stock B of the American Tobacco Company received by them on or about August 2, 1920, and the three dividend certificates issued by said corporation dated, respectively, September 1, 1920, December 1, 1920 and March 1, 1921, and the shares of said common capital stock B received by them on said certificates, as corpus of the trust estate. *Lindsay, C.,* concurs; *Seddon, C.,* not sitting.

PER CURIAM:—The foregoing opinion by ELLISON, C., is adopted as the opinion of the court. All of the judges concur.