E. S. WOODWORTH & COMPANY v. WALTER N. CARROLL.[1]

July 12, 1907.

Nos. 15,260—(157).[2]

**Notice to Corporation.**

A corporation is not charged with notice of facts because of knowledge on the part of an officer or agent, where the officer or agent is dealing with the corporation in his own interest, or where for any other reason his interest is adverse to that of the corporation, so that communication of the knowledge by him cannot be presumed.

**Holder of Note for Valuable Consideration.**

The creditor of the maker of a negotiable note payable in futuro to the order of a third person, who accepts that note, accompanied by collateral security and indorsed by the payee, in payment of a pre-existing debt payable in præsenti, is a holder for a valuable consideration.

**Evidence of Good Faith.**

The evidence in this case shows plaintiff to have been a bona fide holder for value before maturity of a promissory note executed by defendant and by its payee indorsed to him.

**Counterclaim Barred by Limitation.**

Plaintiff, a corporation, refused to allow defendant, a stockholder, to purchase his proper proportion of an issue of new stock. More than six

[1] Reported in 112 N. W. 1054, 115 N. W. 946.  [2] April, 1907, term.

104 M.—5

years afterwards defendant asserted his cause of action, based on that re-fusal, as a counterclaim to an action by plaintiff on his promissory note. *Held*, the counterclaim was barred by the statute of limitations (section 4076, R. L. 1905).

Action in the district court for Hennepin county to recover $6,126 upon a promissory note. The defenses set up in the answer are stated in the opinion. The case was tried before John Day Smith, J., who directed the jury to return a verdict in favor of plaintiff for $7,367.86. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*Wilson & Mercer,* for appellant.

*Cobb & Wheelwright,* for respondent.

JAGGARD, J.

The plaintiff and respondent, a corporation, sought judgment for the principal and interest due on a promissory note dated September 16, 1901, payable to the order of E. S. Woodworth one day after date, for the sum of $6,126, which prior to maturity had been transferred by indorsement to plaintiff. The answer of defendant and appellant for a first defense alleged facts intended to show that as between the maker and payee the note arose out of friendly transactions and did not create a legal obligation, and that the plaintiff was not an innocent purchaser for value before maturity.

For a second defense the defendant alleged "that in the year 1895 he became a purchaser of capital stock of the plaintiff of the par value of $10,000, while the said plaintiff had but an authorized capital stock of $50,000, with only $40,000, par value thereof, outside of plaintiff's stock outstanding; that defendant paid for his said stock the sum of $10,000; that * * * while defendant so held and owned said stock the said plaintiff duly increased its capital stock to the sum of $100,000 par value; that at the time it made its said increase of capital stock plaintiff was entitled to one-fifth of the increase thereof over and above the said $50,000 upon the payment by him therefor at par value to said plaintiff; that he was then able and willing to pay for the said stock in his proportion thereof, and offered to do so at the par value, and demanded that plaintiff allow him to receive the same and pay therefor; that plaintiff did not either issue said additional stock to

defendant or allow him to pay therefor, but thereafter refused the same, and sold the said stock to other parties, and that at the time defendant demanded the same at the time of the increase of said stock the said stock was paying actual dividends upon the basis of the old stock at the rate of twenty per cent. per annum; that the said stock to which defendant was entitled was then worth and of the value of $200 per share, or $20,000 for the amount of such increase which defendant was then entitled to receive; that, after selling the said stock so belonging to defendant, plaintiff held the proceeds thereof in trust for this defendant, and still holds the same, although the defendant duly demanded the same, and all thereof, from plaintiff, on or about the 20th day of June, 1906, to defendant's injury and damage in the sum of $10,000, with lawful interest thereon."

For a first counterclaim the answer asserted the said claim for damages set forth in the second defense; for a second counterclaim, a loan by defendant to plaintiff of $500. The defendant prayed judgment in the sum of $10,726.08, with interest.

The reply put the defenses and counterclaims in issue, and pleaded the bar of the statute of limitations as to the first counterclaim.

At the close of the trial before a jury the court granted plaintiff's motion to direct a verdict for the amount prayed for. Subsequently $500 was deducted from the verdict by agreement. This appeal was taken from the order denying defendant's motion for a new trial.

The first question presented by the assignments of error is whether the facts showed plaintiff to be an innocent purchaser for value before maturity. The note fell due one day after date. It was delivered by defendant to plaintiff on the day of its date, and entered on the books of the company on the next day. It did not become past due until after that day. The trial court, therefore, properly held plaintiff to be a purchaser before maturity.

With respect to the purchase in regular course of business without notice, defendant insists the dealings between him and Woodworth which led to the execution of the note show that it was made as a matter of accommodation purely without consideration, that it was delivered on conditions which have never been fulfilled, and that the knowledge of Woodworth, the president of the plaintiff company, was notice to and knowledge by it of these facts. The record, however,

conclusively establishes that the transactions referred to consisted of a series of trades on the stock exchange conducted by Woodworth in defendant's name for joint profit, through the plaintiff; that these trades were entered on the books in defendant's name; that Woodworth paid to it money to make good losses, and indorsed this note to it in part payment of such losses. He thereby became liable to the company for that note. The doctrine that a principal is chargeable with notice of facts known to his agent is based on the ground that it is the duty of the agent to communicate his knowledge to the principal, and that it is to be presumed that he has performed this duty. Ordinarily this presumption is conclusive. The reason of the rule ceases, however, where the agent is dealing with the principal for his own purposes, or where for other reasons his interest is adverse to that of the principal, so that it is to his own advantage not to impart his knowledge to the principal. It is accordingly well settled in the law that a corporation is not chargeable with notice of facts because of knowledge on the part of an officer or agent, where the officer or agent is dealing with a corporation in his own interest, and where for other reasons his interest is adverse to that of his corporation, so that communication of knowledge by him cannot be presumed. Clark & Marshall, Corp. 2207; Bang v. Brett, 62 Minn. 4, 63 N. W. 1067; Dorr v. Life Ins. Clearing Co., 71 Minn. 38, 73 N. W. 635, 70 Am. St. 309; Ft. Dearborn Nat. Bank v. Seymour, 71 Minn. 81, 73 N. W. 724. It follows that the trial court was justified in extending the protection of negotiable paper to plaintiff.

Defendant contends that the consideration paid by plaintiff consisted merely of the cancellation of a prior indebtedness, and did not make the plaintiff a purchaser of the note in good faith for a valuable consideration. It is, however, the rule alike of the English and the American cases that "a bona fide holder, taking a negotiable note in payment of or as security for a pre-existing debt, is a holder for a valuable consideration, entitled to protection against all the equities as between the antecedent parties." Mr. Justice Story, in Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865. And see Railroad Co. v. National Bank, 12 Otto, 14, 26 L. Ed. 61; 9 Rose's Notes on U. S. Reports, 1039. We are referred in this connection by plaintiff to Minor v. Willoughby, 3 Minn. 154 (225) and to Baze v. Arper, 6 Minn. 142 (220). These cases, if inconsistent with the rule that a bona fide indorsee, taking a negotiable in-

strument in payment or as security for a pre-existing debt, is a holder for value, are overruled by Stevenson v. Hyland, 11 Minn. 128 (198). Wilson, C. J., speaking for the court, there expressly adopted the rule laid down in Swift v. Tyson, supra. It is to be noted, however, that in neither of those cases was the question of what constitutes a bona fide indorsee of a negotiable instrument for value involved. The questions therein related to bona fide purchasers of real estate for value. In this respect it would seem that these cases have been overruled. See Young, J., in Horton v. Williams, 21 Minn. 187, 193.

In the case at bar plaintiff had advanced money for defendant and entered charges therefor upon its books. It balanced the account by crediting on those books the note for total amount of the loans, executed by a third person and accompanied by insurance policies as collateral security, upon the indorsement to it of that note. It is wholly incidental and immaterial that for these insurance policies another was subsequently substituted. The consideration paid by the plaintiff for the note was this allowance of credit and the acceptance of the new obligation payable in futuro for the pre-existing debt payable in præsenti, which included the additional liability of the payee through his indorsement. There is no reasonable question as to the existence of a valuable consideration.

The second question concerns the propriety of the trial court's denial of defendant's second defense and counterclaim arising from plaintiff's conduct in connection with its issue of new stock, and its refusal to allow defendant, a stockholder at the time, to purchase his pro rata share of such new stock. Defendant insists that the refusal of the company to accept the proffered purchase of additional stock created an express trust, of which the plaintiff was the trustee and Woodworth the principal; that defendant was not bound as a matter of law to accept the violation of implied contract with plaintiff company, but was entitled to keep it open until he should dispose of the whole matter and treat it as a breach on June 20, 1906, as he had done. By what construction of the actual facts here presented the company can be treated as the trustee of an express trust, in the sense for which defendant contends, we confess to being entirely unable to see. Jones v. Morrison, 31 Minn. 140, 16 N. W. 854, holds the general doctrine

that a corporation is a trustee for the management of the property, and that each stockholder is a cestui que trust according to his interest and share. It applies that doctrine to the exercise of power to employ a greater sum than was originally contributed for corporate purposes within the limits of corporate power. But it by no means holds or intimates that, upon the refusal of the corporation to issue the pro rata number of shares of new stock to the shareholder entitled to them, the statute of limitations does not start into operation. Nor was such a position at all involved in Brown v. Maplewood Cemetery Assn., 85 Minn. 498, 89 N. W. 872. In the case at bar plaintiff's cause of action arose at the time of the refusal of the corporation to issue to the defendant his proportion of new stock. The proper construction of the answer leads to the inference that this was on or about July 27, 1897. This action was commenced on or after June 27, 1906. It was stipulated that plaintiff's original stock was sold July 3, 1899, to Woodworth, and the certificates representing the same delivered to him. Accordingly for more than six and about nine years after he had sold and delivered the stock to Woodworth he asserted no claim such as he now presents. If his cause of action arose from a breach of implied contract or similar obligation, it was barred at the end of six years. Section 4076, R. L. 1905. If his cause of action arose from the failure of a trustee to discharge his trust, it comes within this provision of that section: Actions "to enforce a trust or compel a trustee to account, where he has neglected to discharge the trust, or claims to have fully performed it, or has repudiated the trust relation" are barred at the end of six years. The mere fact that the stockholder had other controversies with Woodworth, the president of the corporation, is immaterial. That fact certainly did not make the corporation a trustee in any peculiar sense, nor confer the right upon the defendant to treat the corporation's refusal to deliver new stock as a breach of his right until he had given up hope of arranging his controversies with Woodworth.

There is no merit in the contention that, if the matter of increased stock should not be held a counterclaim by reason of the statute of limitations, it would be an equitable offset.

Order affirmed.

A reargument having been granted the following opinion was filed on April 18, 1908.

PER CURIAM.

We have reconsidered the questions presented in this cause, with the result that our former conclusion is adhered to.

The order appealed from is affirmed.