Fred SAIGH and Elizabeth Saigh, Appellants,

v.

August A. BUSCH, Jr., and Anheuser-Busch, Incorporated, a Corporation, Respondents.

No. 50622.

Supreme Court of Missouri, Division No. 2.

May 9, 1966.

Rehearing Denied June 13, 1966.

Lon Hocker, St. Louis, Hocker, Goodwin & MacGreevy, St. Louis, of counsel, for appellants.

Mark D. Eagleton, Thomas F. Eagleton, J. J. Thyson, Roberts P. Elam, St. Louis, Albert J. Stephan, Jr., St. Louis, of counsel,

for defendant-respondent August A. Busch, Jr.

Harry W. Kroeger, St. Louis, Dwight D. Ingamells, St. Louis, of counsel, for defendant-respondent Anheuser-Busch, Inc.

STORCKMAN, Judge.

This purports to be a shareholders' derivative action in two counts; the counts were tried and appealed separately. A judgment adverse to the plaintiffs on count 2, involving charges that excessive compensation had been paid to the individual defendant as a corporational officer, was affirmed by the St. Louis Court of Appeals in Saigh ex rel. Anheuser-Busch, Inc. v. Busch, Mo. App., 396 S.W.2d 9. This court is concerned solely with count 1 by which the plaintiffs Fred Saigh and Elizabeth Saigh, for themselves as shareholders of the defendant Anheuser-Busch, Incorporated, and in behalf of the class of shareholders similarly situated, seek to set aside the sale by the corporate defendant of 26,121 shares of its common stock to the defendant August A. Busch, Jr., an officer of the Corporation, pursuant to a stock option agreement.

Count 1 was tried and submitted on a written stipulation of facts and the trial court rendered judgment against the plaintiffs and the class of shareholders represented by them and in favor of the individual and corporate defendants. The plaintiffs contend that the difference between the amount paid for the shares in question and their value is $227,252.70 which vests this court with jurisdiction of the appeal from the adverse judgment on count 1.

The plaintiffs' chief contentions on this appeal are that the consideration for the 26,121 shares sold to the defendant Busch was so inadequate as to constitute fraud on the defendant Corporation and its other shareholders and that the amendment of the corporate charter purporting to abolish existing preemptive rights, being in derogation of shareholders' rights, was void because it was adopted by a vote of less than all of the shareholders.

The defendant Anheuser-Busch, Incorporated, originally organized in 1875, was granted a corporate charter in Missouri on June 20, 1925. The plaintiffs Fred Saigh and Elizabeth Saigh, since January 1, 1954, have owned 30,000 and 1,600 shares, respectively, of the common stock of the Corporation. The defendant Busch has been a member of the Board of Directors of the Corporation since December 7, 1926. He became President and Chief Executive Officer on September 5, 1946, and Chairman of the Board on April 11, 1956. Since the dates specified, he has acted in the capacities indicated.

At the annual meeting of shareholders of the Corporation on April 9, 1952, a proposal to accept the General and Business Corporation Act of Missouri was adopted. The shares of stock entitled to vote on the proposition were 4,475,000. Of that number, 4,056,431 shares were voted in favor of the resolution and none were voted against it. There were 25,000 shares of treasury stock not eligible to be voted. A certificate of the acceptance by the Corporation of the Act was duly filed in the office of the Secretary of State and recorded. On December 7, 1953, the number of authorized common shares was increased from 4,500,000 to 6,000,000 of the par value of $4 per share. At that time the Articles of Incorporation were further amended to provide that: "Authorized but unissued shares of the corporation may be issued at such time or times, in such amounts and for such consideration or considerations (received by the corporation or transferred from surplus to stated capital) not less than the par value thereof, as may from time to time be fixed and determined by the Board of Directors of the corporation."

At a special meeting of the shareholders held on August 2, 1955, a proposed restricted stock option plan for officers and key employees of the Corporation was adopted by a vote of 3,787,386 shares for, and 274,494 shares against it. The following amendment to the Articles of Incorporation of the Corporation was also submitted

to the shareholders and the vote thereon was 3,771,240 shares for and 290,851 against it: "TENTH: 240,811 shares of the common stock of the corporation having a par value of $4 each, which at August 1, 1955 were part of the authorized but unissued shares of said stock, may be issued and sold, at any time or from time to time, to officers and employees of the corporation and its subsidiaries pursuant to any stock option plan duly adopted by the corporation, without being first offered to the holders of the outstanding shares, and no shareholder, as such, shall have a pre-emptive right to acquire any of such shares. * * *"

The plaintiffs were among those shareholders who voted against both the stock option plan and the amendment. Said amendment was certified to and filed with the Secretary of State on August 5, 1955. On September 7, 1955, Mr. Saigh by a telegram to Mr. Busch protested the distribution of shares under the stock option plan until minority shareholders had a chance to be heard. Prior to August 2, 1955, there was no express provision in the corporate charter, in its bylaws, or in its stock certificates referring to any preemptive rights of the shareholders of the Corporation.

Following the adoption of the stock option plan by the shareholders, the Board of Directors at a regular meeting reserved and appropriated 240,811 shares for issue and sale upon the exercise of options under the plan. A stock option committee of members of the Board of Directors was appointed by the Board on August 2, 1955. None of the members of the committee were at any time employees of the Corporation or entitled to participate in the plan. The actions of the Corporation in adopting a stock option plan and in making available the 240,811 shares for the purpose of granting stock options to officers and key employees were reported in a quarterly report to all shareholders on or about August 5, 1955, and the statement relative thereto was repeated in the annual report of the Corporation for the years 1955 to 1962, both

inclusive, which statement also gave information concerning the number of shares with respect to which options were granted, the option prices and the number of shares which remained subject to the plan at the end of the year.

The stock option committee authorized the grant of a stock option to Mr. Busch and, on August 15, 1955, the Corporation executed a stock option agreement by which Mr. Busch received an option to purchase 36,121 shares of the Corporation at $25.30 per share, a price not less than 110 percent of the market price of the shares on that date. The number of shares allocated to Mr. Busch under his option was 15 percent of the 240,811 shares set aside under the plan and was in accordance with a provision that no individual could be granted an option for more than such 15 percent of the total shares. The consideration for the option expressed in the plan was that each individual to whom a stock option was granted agreed to remain in the employment of the Company or one of its subsidiaries, at the pleasure of the Company or of such subsidiary, for at least two years from the granting of such option. The price at which each share of capital stock covered by the option might be purchased was not less than 95 percent of the fair market value of the stock at the time the option was granted unless the optionee owned stock possessing more than 10 percent of the voting power of all stock of the Company within the meaning of § 421(d) (1) (C) of the Internal Revenue Code of 1954, in which event the option price would have to be at least equal to 110 percent of the market value.

Numerous stock option agreements were executed, and beginning on October 18, 1956, various officers and key employees exercised their options to purchase shares. On July 29, 1960, the Corporation sold 21,121 shares of common stock to Mr. Busch and on August 8, 1960, an additional 5,000 shares at $25.30 per share without having first offered any shares to the plaintiffs or to other shareholders proportionately.

The market value of such shares on said date was approximately $34.00 per share. The shares were sold under the restricted stock option plan and the agreement dated August 15, 1955, and in accordance with the definition of the plan in § 421 of the Internal Revenue Code. 26 U.S.C.A. § 421.

Prior to the adoption of the stock option plan, the Corporation had five plants or facilities located in St. Louis and Springfield, Missouri, New Orleans, Louisiana, Los Angeles, California, and at Newark, New Jersey. Thereafter, a new plant was erected in 1960 at New Orleans; a brewery at Tampa, Florida, in 1959; and a malting facility at Manitowoc, Wisconsin, was purchased in 1962. The Corporation also owns the St. Louis National Baseball Club, Inc., popularly known as the St. Louis Cardinals, and Busch Stadium in St. Louis. A ten-year summary of the financial condition of the Corporation, including the years 1953 through 1962, discloses that the assets of the Corporation increased from $149,070,-569 to $204,271,855 and the equity of its shareholders increased from $105,815,803 to $163,127,494. Another exhibit shows that the earnings increased, although not consistently, from $13,232,549 in 1953 to $17,009,-029 in 1962. The number of shareholders of the defendant Corporation was 10,867 in 1955 and grew to 16,024 in 1962. The market price of the Corporation's common stock was about $24 per share in 1952 and it increased to about $56 per share in 1962.

Section 351.185, RSMo 1959, V.A.M.S., subd. 3, provides: "When payment of the consideration for which shares are to be issued shall have been received by the corporation, the shares are full paid and nonassessable. *In the absence of actual fraud* in the transaction, *the judgment of the board of directors* or the shareholders, as the case may be, *as to the value of the consideration received for shares shall be conclusive.*" Emphasis added. The plaintiffs do not contend that this statute is invalid or inapplicable to the transaction in question. In their reply brief the plaintiffs disclaim that they seek "to set aside the stock option *plan* of Anheuser-Busch, Inc.," on the ground that "employee stock option *plans* are void", and affirmatively state their position to be that "there is no legally valid consideration for the *specific sales* to the *specific optionee* under the circumstances in the record." The plaintiffs stop short of expressly stating there was no consideration for the *stock option agreement* entered into with this specific optionee. The distinction they make is a fine one and hardly tenable. If the stock option agreement between the Company and Mr. Busch was supported by a valid consideration and that consideration was performed and paid, it would seem to follow that the *"specific sales"*, that is, the transfer to Mr. Busch of the shares called for by the option agreement, must also be valid.

The purpose of the restricted stock option plan adopted by the defendant Corporation on August 2, 1955, was "to induce officers and key employees of the Company and its subsidiaries, who are in a position to contribute materially to the prosperity thereof, to remain with the Company or its subsidiaries and to encourage them to continue to promote the best interest of the Company and its subsidiaries." The option plan required each individual to whom a stock option was granted, as consideration for the option, to agree in writing to remain in the employment of the Company or its subsidiaries "for at least two years from the date of the granting of such option". By the terms of the stock option agreement entered into on August 15, 1955, Mr. Busch agreed to remain in the employment of the Company for at least two years from that date and, if the covenant was violated, the agreement provided that any option still held by the officer would automatically terminate. It has been generally held that the promise of the optionee to remain in the employer's service for a stipulated period of time constitutes a valid consideration for the stock option agreement. 18 Am.Jur.2d, Corporations § 301; Annotation: 96 A.L.R.2d 176, § 3(b), p. 182; Annotation: 34 A.L.R.2d 852, § 2, p.

855; 5 Fletcher Cyclopedia Corporations, Perm.Ed., § 2143.1 and Cumulative Supplement.

Section 421 of the Internal Revenue Code, 26 U.S.C.A. § 421, provided that if stock was transferred to an individual pursuant to his exercise after 1949 of a restricted stock option, and no disposition of such stock was made by him within two years from the date of granting the option nor within six months after the transfer of such stock to him, no taxable income would result at the time of the transfer of such stock to him. To the same effect are §§ 421–425 of the Revenue Act of 1964. This income tax advantage accounts for the popularity of this type of incentive compensation and is the reason that stock option plans are widely used by corporation employers to retain old employees and to acquire new ones. There is no contention that the stock option agreement between Mr. Busch and the Corporation does not comply with the minimum requirements of 26 U.S.C.A. § 421.

The plaintiffs make three main arguments in support of their contention that the consideration for the sale of the 26,121 shares was so inadequate as to constitute fraud. Two of them relate to the financial advantages and disadvantages of the transaction. They say that Mr. Busch received a gift of $227,252.70 from the Corporation in that he paid $660,861.30 for shares that had a market value of $888,114 at the time the option was exercised. They further assert that the total financial disadvantage to the Corporation was more than twice the difference between the option price and market value because the Corporation also gave up the right to deduct such amount as a business expense under § 162 of the Internal Revenue Code. We need not explore these theories or examine the plaintiffs' computations further than to say these or similar results are inherent in the exercise of the options granted by all such agreements. If the employee is not permitted to take advantage of the increase in value of the optioned shares, then the essential purpose of this additional incentive de-

vice is defeated. There are undoubtedly numerous instances where the spread is much greater than in this case. Obviously, an option will not be exercised where the market value is less than the option price. Neither the amount involved nor any other fact or circumstance in this case is indicative of fraud.

The final contention on the inadequacy of consideration issue is that by reason of Mr. Busch's stock ownership, his various official positions and long tenure with the Corporation, he did not need a stock option agreement to induce him to remain. That may be true. The Directors may also have been confident that the Corporation would not lose any valuable property by fire within the next two years because of a good fire record in the past, but the business policy of being assured and insured in both particulars cannot be justly criticized merely because the period has expired without a casualty having occurred. The Corporation was not prohibited by law from granting a restricted stock option to a long-time officer who was also a substantial stockholder. The chances of such an employee leaving might be less, but the injurious consequences of his leaving, and perhaps joining a competitor, would be much greater. There is no showing of fraud and on the record before us the Board of Directors was vested with the determination of whether to grant the option, and the shareholders are without lawful authority to control or restrict this exercise of business judgment. Santa Fe Hills Golf & Country Club v. Safehi Realty Co., Mo., 349 S.W.2d 27, 34 [4].

The plaintiffs assert that the Directors of the Corporation had no discretion to sell the corporate shares except at the market price. Section 351.185 does not so limit the Directors. Article 11, § 7, Constitution of Missouri 1945, V.A.M.S., provides that a corporation can issue stock for "money paid, labor done or property actually received." In the absence of actual fraud in the transaction, the judgment of the Board of Directors as to the value of

the consideration received for the shares will not be interfered with. The agreed statement of facts which is the evidence in the case does not demonstrate or permit any inference of fraud. We hold the stock option agreement and the sale of the shares pursuant thereto were supported by a legally sufficient consideration which was duly performed and paid. Putnam v. Juvenile Shoe Corporation, 307 Mo. 74, 269 S.W. 593, 597 [3], 40 A.L.R. 1412. Plaintiffs' first point is without merit and is denied.

Next the plaintiffs contend that the amendment of the corporate charter purporting to abolish preemptive rights in the block of shares set aside for stock option agreements, being in derogation of shareholders' rights, was void because the amendment was adopted by a vote of less than all of the shareholders. It will be noted that this complaint directly attacks the validity of this amendment to the Articles of Incorporation, which amendment was adopted by a vote of 3,771,240 for and 290,851 votes against at a special meeting of the shareholders on August 2, 1955. The amendment undertakes to set aside 240,811 shares of the authorized but unissued common stock of the Corporation for sale and issuance at any time or from time to time to officers and employees of the Corporation and its subsidiaries pursuant to any stock option plan duly adopted by the Corporation without being first offered to holders of the outstanding shares, and the amendment specifically provides that no shareholder, as such, shall have a preemptive right to acquire any of these shares. The plaintiffs voted their shares against the amendment. The Corporation contends, inter alia, that an action for the violation of a preemptive right to purchase shares of corporate stock is not a secondary or derivative action, but must be brought directly in the right of the shareholder and not on behalf of the Corporation.

■ In 18 Am.Jur.2d, Corporations § 281, p. 804, the prevailing rule is stated in this manner: "Where the pre-emptive rights of shareholders have been violated, the wrong is to the shareholders and not to the corporation. Accordingly, an action brought for the violation of such right must be in the right of the shareholder and may not be maintained on behalf of the corporation. Moreover, if the shareholders who have been deprived of their rights do not complain, it does not lie within the power of the corporation to rescind the sale of shares sold in violation of pre-emptive rights, especially where the sale has been for value."

The issue was involved in Barsan v. Pioneer Savings & Loan Co., 163 Ohio St. 424, 127 N.E.2d 614, 621 [10–12], and the court stated: "However, pre-emptive rights of shareholders are rights of the shareholders and not rights of the corporation. If those rights have value and shareholders are deprived of those rights, it is the shareholders who are damaged, not the corporation. Thus, if the action of the corporation deprives a shareholder of his pre-emptive rights, the shareholder may have an action against the corporation to recover for their value. [citing cases] Also, if such a remedy at law would be inadequate as a protection for the shareholder's interests in the corporation, the shareholder may have equitable relief to protect those interests. [citing cases] But the corporation is not damaged merely because its shareholders are deprived of such rights, and, therefore, the corporation has no legal or equitable right with respect to their enforcement."

Waters v. Horace Waters & Co., 201 N.Y. 184, 94 N.E. 602, 603, held that "the plaintiff, in the absence of any waiver or matter of estoppel, had a personal right of action growing out of the issue of the Hamilton stock, but it was a right of action *against* the corporation, not in its behalf. No conceivable injury could be sustained by the corporation by reason of the issue and sale of three shares of its capital stock at par, unless as matter of fact a larger price was obtainable therefor." We have heretofore considered and held that the Corporation was not defrauded and that the stock option agreement and the sale of the shares

in question were supported by a legally sufficient consideration.

■■■■ Although the precise question appears not to have been directly decided in this state, the courts have adjudicated without reservation alleged violations of preemptive rights where direct actions were brought by complaining shareholders against corporations. Maynard v. Doe Run Lead Co., 305 Mo. 356, 265 S.W. 94; Knapp v. Publishers, George Knapp & Co., 127 Mo. 53, 29 S.W. 885. See also Dyer v. Securities and Exchange Commission, CA–8, 290 F.2d 534, 539 [4], and Ames v. Mengel Company, CA–2, 190 F.2d 344, 346 [2]. In the Mengel case the court stated in substance that the plaintiff did not represent the corporation but only herself and other like shareholders, and that the corporation was not a nominal defendant but the actual one. The clear weight of authority is that a shareholder may seek relief directly in equity to vindicate his preemptive rights or sue at law for damages. 18 Am.Jur.2d Corporations § 281, p. 802; Annotations: 138 A.L.R. 526, 536, and 52 A.L.R. 220, 241. We hold that plaintiffs' claim to preemptive rights in the block of 240,811 shares is a direct and primary action and not a derivative or secondary action. In order to prevail on this claim, it was necessary for the plaintiffs to establish that the charter amendment of August 2, 1955, purporting to abolish preemptive rights was invalid. The plaintiffs have undertaken to establish this proposition by the second point of their brief.

The pleading is unsatisfactory in that count 1 combines a claim of inadequate consideration constituting fraud regarding the 26,121 shares transferred under the option agreement to Mr. Busch with a claim that the amendment of August 2, 1955, purporting to extinguish shareholders' rights in the block of 240,811 shares, is invalid. The quantum and character of relief in each instance is different. If the plaintiffs prevailed on both claims, they would be restored to their preemptive rights in the block of 240,811 shares *and* the sale of the

26,121 shares to Mr. Busch could be set aside on equitable terms. But, if they succeded *only* in establishing their preemptive rights in the block of 240,811 shares, Mr. Busch might still be entitled to retain his 26,121 shares. On the other hand, if they succeeded *only* in establishing that the sale of 26,121 shares to Mr. Busch was fraudulent, they would still be without preemptive rights in any of the 240,811 shares optioned for a valid consideration. We have held against the plaintiffs on their claim that the sale to Mr. Busch was invalid, and therefore, all that remains is their claim *against the Corporation* that they are entitled to preemptive rights in the block of 240,811 shares. Unless the charter amendment of August 2, 1955, can be proved to be invalid, the plaintiffs are not entitled to prevail on this score.

In addition to their defenses on the merits, the defendants have interposed the plea that the cause of action did not accrue within five years next before the commencement of the action and was barred under § 516.120 of the statutes of limitation, and the further plea that the plaintiffs were barred by laches from maintaining the action. The pleas in bar of the action are so compelling that we cannot reach and effectively decide the validity and scope of § 351.305 which furnishes the legal basis for the adoption of the August 2, 1955, amendment limiting preemptive rights.

On August 2, 1955, the shareholders of the corporate defendant not only approved the stock option plan, but also adopted the amendment to the Articles of Incorporation which barred preemptive rights with respect to the 240,811 shares set aside for options under the plan. On August 15, 1955, a stock option agreement was entered into with Mr. Busch and thereafter numerous other such agreements were made with other officers and key employees. The first option to purchase shares under the plan was exercised on October 18, 1956, by someone other than Mr. Busch. The operation and progress of the plan and agreements thereunder were the subject of reports and

comments in subsequent annual reports of the Corporation. There is no charge of concealment of any material fact. On September 7, 1955, Mr. Saigh sent Mr. Busch a telegram suggesting postponement of the "distribution of approximately 240,000 shares" until minority shareholders could be heard. The telegram concluded: "Proceeding in direct conflict with minority views will be construed as a challenge to quick action." Nevertheless, the Corporation continued to operate the stock option plan and the plaintiffs did not file suit until May 7, 1963.

Point 2 of plaintiffs' brief states that "the amendment to Anheuser-Busch's charter purporting to abolish the existing preemptive rights of shareholders was void under applicable law". If that statement is true now, it was true on August 2, 1955, when the amendment was adopted and at all times thereafter. The amendment is what decisively and permanently impaired the plaintiffs' preemptive rights in that block of shares. As of the date the amendment was adopted, the plaintiffs' cause of action accrued and they were entitled to undertake to have the amendment declared void and to enjoin the issuance of any of these shares without first offering them proportionately to the present shareholders. Ames v. Mengel Co., CA–2, 190 F.2d 344. The invalidity of the charter amendment as a basis for setting aside the sale of stock to optionees can relate only to the time of adoption of the amendment.

■ The case of Maynard v. Doe Run Lead Co., 305 Mo. 356, 265 S.W. 94, is controlling. In that case the shareholders increased the capital stock, paid for the increase out of surplus assets and provided that the increased capital stock be held as treasury stock to be sold for the company benefit or paid out as stock dividends in the discretion of the directors. The directors declared a stock dividend and the rest was retained as treasury stock in the treasury of the company. This was done May 10, 1906. In November 1920 the plaintiff brought suit to compel issuance to him of shares of stock to which he claimed to be entitled as his proportionate share of the increased capital stock. The court held that the five-year statute of limitations barred recovery because plaintiff's cause of action arose when the board of directors set aside the increase of stock as treasury stock. In this connection, the court stated, 265 S.W. 94, 98–99: "He [the plaintiff] claims that his cause of action did not accrue at that time, because it is not necessary to have certificate stock issued to attest the ownership of the stock. Permitting the certificates to remain unissued would not affect his right to it nor put upon him the necessity of demanding or suing for his certificates. Conceding that principle to be correct, as a general rule, it would not apply in this case, because the stockholders of the company and the directors of the company, by the action taken May 10, 1906, asserted a right to the stock, hostile to his claim, by making it treasury stock, as shown in the minutes set out above. It was that hostile act which he claims wronged him and furnished him a cause of action. No demand was necessary. So far as his rights were concerned he could sue then, and the statute began to run from that moment." See also Hunter v. Hunter, 361 Mo. 799, 237 S.W.2d 100, 24 A.L.R.2d 611; Gruenewaelder v. Wintermann, Mo., 360 S.W.2d 678; and E. S. Woodworth & Co. v. Carroll, 104 Minn. 65, 112 N.W. 1054, 115 N.W. 946, where a defendant shareholder's counterclaim based upon the corporation's refusal to allow him to purchase his proportionate part of a new issue of stock was held barred by a five-year statute of limitations, suit being brought more than six years after the refusal and sale of stock. We hold that the plaintiffs' right of action in the present case is barred by § 516.120, RSMo 1959, V.A.M.S.

■ We are also impressed by the defendants' plea of laches. At various times after the adoption of the stock option plan on August 2, 1955, stock option agreements, similar to the one with Mr. Busch, were entered into between numerous eligible

officers and key employees and the Corporation. Beginning with October 18, 1956, these options to purchase shares were exercised and continued to be exercised up to the time the facts were stipulated. The suit was not filed until May 7, 1963, almost three years after Mr. Busch exercised his options in July and August 1960. The facts permit a reasonable inference of disadvantage to the various optionees as well as the Corporation by reason of the delay after the promise of "quick action" in September 1955. Jones v. Fidelity Nat. Bank & Trust Co. of Kansas City, 362 Mo. 712, 243 S.W.2d 970, 979 [11]. Since the relief sought is barred by limitations and laches, we are precluded from any meaningful consideration of other questions presented by the parties.

The judgment is affirmed.

All of the Judges concur.